## WARREN T. KENNY *v.* SANDRA J. KENNY (14653)

CALLAHAN, BORDEN, NORCOTT, KATZ and PALMER, Js.

Argued March 24—decision released July 6, 1993

*James E. Mattern,* for the appellant (defendant).

*Raymond L. Baribeault, Jr.,* with whom was *Miriam Gardner-Frum,* for the appellee (plaintiff).

PALMER, J. The sole issue presented by this appeal is whether the trial court had subject matter jurisdiction to open a marital dissolution judgment for the purpose of allocating military retirement benefits pursuant to the federal Uniformed Services Former Spouses' Protection Act[1] after the statutory time period allow-

---

[1] Title 10 of the United States Code, § 1408 (c) (1) (1988) provides in relevant part: "[A] court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as prop-

ing the opening of judgments had expired. The trial court dismissed the defendant's motion to open and modify that portion of the dissolution decree concerning the assignment of property. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We conclude that the trial court properly determined that it lacked subject matter jurisdiction to entertain the defendant's motion.

The trial court dissolved the parties' marriage on August 24, 1982. The dissolution decree incorporated the agreement of the parties concerning custody, alimony and the division of certain property that is not at issue in this appeal.[2] In September, 1990, more than eight years after the rendition of the dissolution judgment, the defendant, Sandra J. Kenny, moved to open and modify the decree in order to obtain a share of the payments to which the plaintiff, Warren T. Kenny, became eligible upon his retirement from the United States Navy on November 30, 1983. The defendant relies upon the Uniformed Services Former Spouses' Protection Act (act) to support her claim that she is equitably entitled to share in the plaintiff's retirement benefits.

Congress passed the act in response to the decision of the United States Supreme Court in *McCarty* v. *McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981), holding that state courts could not consider military retirement pay in assigning marital property pursuant to a dissolution decree. The act authorizes state courts to assign such benefits, retroactive to the

erty solely of the member or as property of the member and his spouse *in accordance with the law of the jurisdiction of such court."* (Emphasis added.)

[2] The judgment was modified on two occasions in 1984 with respect to custody and child support.

date of the *McCarty* decision,[3] "in accordance with the law of the jurisdiction of such court[s]." 10 U.S.C. § 1408 (c) (1) (1988).

On appeal, the defendant concedes that the retirement benefits at issue here constitute property within the meaning of General Statutes § 46b-81[4] and that property assignments generally are final at the time of the dissolution decree, subject only to a motion to open under General Statutes § 52-212a.[5] The defend-

[3] *McCarty* v. *McCarty,* 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981), was decided on June 26, 1981. President Ronald Reagan signed the Uniformed Services Former Spouses' Protection Act on September 8, 1982, and the act took effect on February 1, 1983.

[4] General Statutes § 46b-81 provides in relevant part: "ASSIGNMENT OF PROPERTY AND TRANSFER OF TITLE. (a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the superior court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect. . . .

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[5] The defendant does not claim that the judgment may be opened even after the expiration of the four month period because it was obtained by fraud, duress or mutual mistake; see *In re Baby Girl B.,* 224 Conn. 263, 283, 618 A.2d 1 (1992); see also *O'Leary* v. *Industrial Park Corporation,* 211 Conn. 648, 652–53 n.2, 560 A.2d 968 (1989); or that the plaintiff has submitted to the jurisdiction of the court by consent, waiver or otherwise. See *O'Leary* v. *Industrial Park Corporation,* supra; see also *Bunche* v. *Bunche,* 180 Conn. 285, 287–89, 429 A.2d 874 (1980).

Although the Uniformed Services Former Spouses' Protection Act was signed by President Reagan on September 8, 1982, two weeks after the parties' August 24, 1982 divorce, the act did not take effect until Febru-

ant argues, however, that because Congress passed the act to permit state courts to consider military retirement payments in determining the appropriate division of assets between former spouses retroactive to the date of the *McCarty* decision, the federal statute preempts state restrictions on opening and modifying dissolution judgments subsequent to that date. The plaintiff contends, to the contrary, that, notwithstanding the provisions of the act, the trial court lacked subject matter jurisdiction to open the judgment because General Statutes § 46b-86 (a)[6] deprived the court of continuing jurisdiction with respect to the distribution of property in a dissolution decree and the four month period for opening or setting aside a civil judgment pursuant to § 52-212a[7] had long since passed. We agree with the plaintiff.

ary 1, 1983. A motion to open filed within four months of the divorce would have preceded the effective date of the act. The plaintiff concedes, however, that the trial court could have acted on the defendant's motion at that time. See, e.g., *Cameron* v. *Cameron*, 641 S.W.2d 210, 212–13 (Tex. 1982).

[6] General Statutes § 46b-86 provides in relevant part: "MODIFICATION OF ALIMONY OR SUPPORT ORDERS AND JUDGMENTS. (a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. . . . This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law." See also *Bunche* v. *Bunche,* 180 Conn. 285, 289, 429 A.2d 874 (1980) ("[b]y its terms, [§ 46b-86 (a)] deprives the Superior Court of continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other party").

[7] General Statutes § 52-212a provides: "CIVIL JUDGMENT OR DECREE REOPENED OR SET ASIDE WITHIN FOUR MONTHS ONLY. Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the superior court may

The act provides in relevant part that "[s]ubject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a [service] member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408 (c) (1) (1988). The Senate Report on the act stated that "[t]he purpose of this [act] is to place the courts in the same position they were in on June 26, 1981, the date of the *McCarty* decision, with respect to treatment of non-disability military retired or retainer pay. The [act] is intended to remove the federal pre-emption found to exist by the United States Supreme Court[8] and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisible." S. Rep. No. 97-330, 97th Cong., 2d Sess. (1982), reprinted in 1982 U.S. Code Congressional and Administrative News 1555, 1611. The Senate Report explains further, however, that "[n]othing in [the act] requires any division; it leaves

---

not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court."

[8] The United States Supreme Court had concluded that "Congress has enacted a military retirement system designed to accomplish two major goals: to provide for the retired service member, and to meet the personnel management needs of the active military forces." *McCarty* v. *McCarty*, 453 U.S. 216, 232–33, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981). Because the "community property division of retired pay has the potential to frustrate each of these objectives"; id., 233; the court concluded that "the application of community property principles to military retired pay threatens grave harm to 'clear and substantial' federal interests"; id., 232; in violation of the supremacy clause of the United States constitution. U.S. Const., art. VI, clause 2. Although *McCarty* addressed the preemption issue in the context of the laws of California, a community property state, the plaintiff does not argue that the result would have been different under the laws of this state, an equitable distribution jurisdiction.

that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution." Id.

The parties agree that, although the act removed the *federal* preemption barrier to the retroactive division of the plaintiff's military retirement benefits, *state law,* apart from such preemption, may prohibit the trial court from entertaining the defendant's motion to open and modify the divorce decree in these circumstances. The trial court could have considered the defendant's motion, therefore, only if the act preempted those state law provisions that bar the opening and modification of the dissolution judgment.

" '[S]tate law can be preempted in either of two general ways. If Congress evidences an intent to occupy a given field, any state law falling within that field is preempted. . . . If Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law . . . or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.' " (Citations omitted.) *Times Mirror Co.* v. *Division of Public Utility Control,* 192 Conn. 506, 510–11, 473 A.2d 768 (1984), quoting *Silkwood* v. *Kerr-McGee Corporation,* 464 U.S. 238, 248, 104 S. Ct. 615, 78 L. Ed. 2d 443 (1984).

We are mindful, however, that "[s]tate law is today preempted only to the extent necessary to protect the achievement of the aims of the federal law. . . . The governing federal principle now is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.

. . . [C]ourts should not readily infer that Congress has deprived states of the power to act on interests deeply rooted in local feeling and responsibility which only peripherally concern an area controlled by non-conflicting federal legislation. . . ." (Citations omitted; internal quotation marks omitted.) *Times Mirror Co.* v. *Division of Public Utility Control,* supra, 511–12. "State family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden." *Hisquierdo* v. *Hisquierdo,* 439 U.S. 572, 581, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979), quoting *United States* v. *Yazell,* 382 U.S. 341, 352, 86 S. Ct. 500, 15 L. Ed. 2d 404 (1966). A federal statute, therefore, will not be deemed to preempt state family law unless "Congress has 'positively required by direct enactment' that state law be pre-empted." *Hisquierdo* v. *Hisquierdo,* supra, quoting *Wetmore* v. *Markoe,* 196 U.S. 68, 77, 25 S. Ct. 172, 49 L. Ed. 390 (1904).

Applying these principles to the facts of this case, we conclude that the act does not preempt our state law provisions restricting the opening and modifying of judgments. The act itself provides that it is to be applied by state courts 'in accordance with the law of the jurisdiction of such court[s]'; 10 U.S.C. § 1408 (c) (1) (1988); and nothing in the language of the act or in its legislative history suggests that Congress intended to mandate the opening of dissolution judgments by state courts in jurisdictions that prohibit such reconsideration. Indeed, the purpose of the act is to "remove the federal pre-emption found to exist by the United States Supreme Court [in *McCarty*]"; S. Rep. No. 97-330, supra; not to preempt state laws in the area of domestic relations, a field long recognized to fall within the primary interest of the states rather than the federal government. See, e.g., *Hisquierdo* v. *Hisquierdo,* supra, 581 ("[i]nsofar as marriage is within temporal control, the States lay on the guiding hand"); *In re Burrus,* 136

U.S. 586, 593–94, 10 S. Ct. 850, 34 L. Ed. 500 (1890) ("[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States").

The defendant cites no authority in support of her contention that the act preempts state laws restricting or prohibiting the opening and modification of property distributions in dissolution judgments, and we have found none. On the contrary, in those jurisdictions with laws that restrict or prohibit the opening of such decrees, courts have refused to open the judgments notwithstanding the provisions of the act. See *Holler* v. *Holler,* 257 Ga. 27, 354 S.E.2d 140 (1987); *Curl* v. *Curl,* 115 Idaho 997, 772 P.2d 204 (1989); *Bishir* v. *Bishir,* 698 S.W.2d 823 (Ky. 1985); *Andresen* v. *Andresen,* 317 Md. 380, 564 A.2d 399 (1989); *In re Marriage of Quintard,* 691 S.W.2d 950 (Mo. App. 1985), on appeal after remand, 735 S.W.2d 388 (Mo. App. 1987); *Allison* v. *Allison,* 690 S.W.2d 340 (Tex. Ct. App. 1985). Moreover, state courts have entertained motions to open dissolution decrees seeking division of military retirement benefits only if state law expressly authorizes consideration of such motions. See, e.g., *Edsall* v. *Superior Court,* 143 Ariz. 240, 693 P.2d 895 (1984); *Smith* v. *Smith,* 458 A.2d 711 (Del. Fam. Ct. 1983); *In re Marriage of Waters,* 724 P.2d 726 (Mont. 1986); *Castiglioni* v. *Castiglioni,* 192 N.J. Super. 594, 471 A.2d 809 (1984); *Koppenhaver* v. *Koppenhaver,* 101 N.M. 105, 678 P.2d 1180 (Ct. App. 1984); *In re Marriage of Flannagan,* 42 Wash. App. 214, 709 P.2d 1247 (1985), review denied, 105 Wash. 2d 1005 (1986); *In re Marriage of Giroux,* 41 Wash. App. 315, 704 P.2d 160 (1985); *Thorpe* v. *Thorpe,* 123 Wis. 2d 424, 367 N.W.2d 233 (Ct. App. 1985).

There is no basis to conclude that our statutory restrictions concerning the opening of property assignments in dissolution decrees conflict with federal law

or that Congress has evidenced an intent to occupy the field with respect to the division of military retirement benefits in such decrees. *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 493, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986). Because the act does not preempt Connecticut statutory provisions prohibiting the opening of the assignment of property in the parties' 1982 dissolution decree, the trial court properly dismissed the defendant's motion to open and modify the judgment.

The judgment is affirmed.

In this opinion the other justices concurred.