[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Pace Air Services, Inc. appeals under General Statutes §31-249b from a decision of the Employment Security Board of Review allowing a former employee of Pace, Jeffrey Chalmers, to receive unemployment compensation benefits. Chalmers was discharged from employment after Pace learned that a urinalysis test showed he had ingested cocaine. Pace claims, among other things, that the Federal Motor Carrier Safety Regulations[1]
preempted or invalidated the provisions of the Connecticut Unemployment Compensation Act[2] under which Chalmers was entitled to receive compensation. For the reasons stated below, the appeals is denied.
I. PROCEDURAL HISTORY
After Pace terminated Jeffrey Chalmers' employment on April 6, 1992, he applied for unemployment benefits. A claims examiner for the Labor Department, acting pursuant to General Statutes § 31-241, determined that Chalmers was eligible to receive benefits. Pace appealed. An Appeals Referee conducted a de novo
hearing pursuant to General Statutes § 31-242 and affirmed the award. Pace thereupon filed a motion to vacate the referee's CT Page 1461 award. The Employment Security Board of Review treated the motion as an appeal to the Board pursuant to General Statutes § 31-249
and affirmed the referee's decision. Pace moved pursuant to General Statutes § 31-249a to reopen and/or vacate the Board's decision. After the Board denied the motion, Pace timely appealed to this court under General Statutes § 31-249b.
II. JURISDICTION
All appeals from the board to the court are controlled by General Statutes § 31-249b. Calnan v. administrator,Unemployment Compensation Act, 43 Conn. App. 779, 783,686 A.2d 134 (1996). "Judicial review of any decision shall be allowed only after an aggrieved party has exhausted his remedies before the board." Molnar v. Administer, Unemployment Compensation Act,44 Conn. Sup. 285, 289, 685 A.2d 1157 (1995), aff'd,239 Conn. 233, 685 A.2d 1107 (1996). Pace is an aggrieved party since its pecuniary interest has been affected by the Board's decision. Pace has exhausted its administrative remedies as the Board has refused Pace's motion to reopen and/or vacate the decision of the Board. Accordingly, this court has jurisdiction to consider the appeals under § 31-249b.
III. STANDARD OF REVIEW
When this court decides an appeal under § 31-249b, this court does not retry the facts or hear evidence but rather sits as an appellate court to review the record certified and filed by the Board of Review. E.g., United Parcel Services, Inc. v.Administrator, 209 Conn. 381, 385, 551 A.2d 724 (1988). "[I]t is not [the court's] function to adjudicate questions of fact, nor may it substitute its own conclusions for those of the Board."Cervantes v. Administrator, 177 Conn. 132, 134, 411 A.2d 921
(1979). The court is bound by the findings of subordinate fact and the reasonable factual conclusions of the Board. Guevara v.Administrator, 172 Conn. 492, 495, 374 A.2d 1101 (1977). If the Board's conclusions are reasonably and logically drawn, the court is legally powerless to alter them. Id. at 495-96. Legal conclusions must stand if they result from a correct application of the law to the facts found and reasonably and logically follow from such facts. United Parcel Service, Inc. v. Board, supra at 385. In the end, the court is limited to determining, on the record, whether there is a logical and rational basis for the decision of the Board or whether, in light of the evidence, the Board has acted unreasonably, arbitrarily, illegally or in abuse CT Page 1462 of its discretion. Fellin v. Administrator, 196 Conn. 440, 445,493 A.2d 174 (1985).
IV. DISCUSSION
Pace contends that the Unemployment Compensation Act[3], as it existed in 1992, was preempted by the Federal Motor Carrier Safety Regulations and was therefore erroneously applied by the Board. A drug test administered to Chalmers at a clinic showed that he had used an illicit drug. He denied using drugs on the job. He was not observed engaging in unusual behavior on the job. In 1992, an employee who was discharged for failing a drug test was not disqualified under the Unemployment Compensation Act from receiving unemployment compensation. General Statutes § 31-236
(a)(2)(B) provides that an applicant for unemployment compensation benefits "shall be ineligible for benefits . . . if, in the opinion of the administrator, he has been discharged or suspended for felonious conduct constituting larceny of property or service, . . . repeated wilful misconduct in the course of employment, just cause, or participation in an illegal strike . . . ." For a claimant to be disqualified, the claimant's illegal drug use had to constitute "repeated wilful misconduct in the course of employment," "just cause" or "felonious conduct." Under the agencies' regulations[4] and case precedent interpreting the terms "wilful misconduct" and "just cause,"[5]
Chalmers was eligible to receive benefits.
Pace claims that state law interferes with the objectives of the federal regulations. It argues that it was entitled to terminate Chalmers upon his testing positive for drug use and that the provisions of the General Statutes that provide for an award of unemployment compensation under such circumstances discourages employers from complying with the federal regulations. This interference with the federal regulations, argues Pace, requires this court to find that the regulations preempted and invalidated state unemployment compensation laws that provide for an award of benefits. The issue to be resolve is whether the Unemployment Compensation Act was preempted by federal regulations. This court concludes that the Act was not preempted.
"[S]tate law is today perempted only to the extent necessary to protect the achievement of the aims of the federal law."Kenney v. Kenney, 226 Conn. 219, 224, 627 A.2d 426 (1993). The federal regulations and the Connecticut Unemployment Compensation CT Page 1463 Act address different policy issues. The federal regulations pertain to safety issues. The Connecticut Unemployment Compensation Act, on the other hand, regulates job security issues. The federal safety regulations "require motor carriers who operate commercial motor vehicles in interstate commerce to have an anti-drug program including testing of commercial motor vehicle drivers for the use of controlled substances."[6] A commercial motor carrier's anti-drug program must include random testing for illicit drug use.[7] If a driver tests positive for use of a controlled substance, the driver may not be "on duty"[8]
and is "medically unqualified to operate a commercial motor vehicle."[9]
"The overall goal of testing is to ensure a drug-free transportation environment . . . ."[10] The federal regulations do not, however, require an employer to fire an employee for drug use.
As part of the rule making process, the Federal Highway Administration held a series of public hearings on its proposal to adopt regulations requiring motor carriers who operate commercial motor vehicles in interstate commerce to have an antidrug program that includes testing drivers for drugs. Employer and employee groups voiced different views on employee assistance programs and rehabilitation. After considering the different viewpoints, the Federal Highway Administration adopted regulations and, in doing so, stated that the regulations did not relate to job security. "Issues such as termination, reassignment, hiring of temporary drivers to fill a position, or policies regarding a driver's absence from a position are, the FWHA believes, issues that are appropriately the subject of labor-management negotiations and are not issues to be addressed in this rulemaking action."[11] Under the federal regulations, an employer and an employee group can negotiate an agreement that provides, in the event a driver tests positive for use of a controlled substance, some degree of job security for the driver as well as a drug rehabilitation program. If an employer and an employee group can enter into such an agreement without contravening the goals of the federal regulations, it follows that a state legislature can require an employer to pay unemployment compensation benefits to an employee who is summarily terminated after testing positive for use of a controlled substance. The Connecticut Unemployment Compensation Act was not preempted by the federal highway safety regulations. Because the federal regulations did not preempt state laws relating to job security, this court can not declare the Connecticut law invalid. CT Page 1464
Whether unemployment compensation should be paid to a driver who has been terminated for off-duty drug use is a policy issue that is for the Connecticut legislature to decide. In 1993, the legislature amended the Unemployment Compensation Act so as to relieve an employer of charges to its account in cases where a recipient of benefits has been discharged for violating an employer's drug testing policy that was adopted and applied in compliance with state or federal law.[12] In 1995, the legislature further amended the Act so as to disqualify an employee from receiving unemployment compensation benefits when "it is formed by the administrator that he has been discharged or suspended because he has been disqualified under state or federal law from performing the work for which he was hired as a result of a drug or alcohol testing program mandated by and conducted in accordance with such law, until such individual has earned at least ten times his benefit rate."[13] Since Chalmers was discharged before the effective dates of these amendment, the amendments do not apply to this case.
Pace claims that the Board improperly discredited the drug test. Chalmers had requested a confirmatory test as provided by General Statutes § 31-51 u. Because Pace failed to use the split-sample method of specimen collection as required by General Statutes § 31-51 u, a confirmatory test could not be performed. Section 31-51 u provides that "[n]o employer may determine an employee's eligibility for . . . termination solely on the basis of a positive urinalysis drug test unless . . . such positive test result was confirmed by a second urinalysis drug test . . . ." At the time Chalmers was administered the test, the pertinent federal regulation allowed, but did not require, the examiner to use a split sample.[14] Today, a split-sample is required under both state and federal law.[15] Pace argues that General Statutes § 31-51 u was preempted by the Federal Motor Carrier Safety Regulations and was therefore erroneously applied. In light of the fact the federal regulations explicitly allowed for the split-sample method of collection, this court concludes the state statute was not in conflict with the federal regulation and was not preempted.
In view of the court's decision on the preemption issues, it is not necessary to decide the other issues raised by Pace. The appeal is dismissed.
THIM, JUDGE