## STATE OF CONNECTICUT-UNIFIED SCHOOL DISTRICT #1 ET AL. *v.* STATE DEPARTMENT OF EDUCATION ET AL.

Superior Court          Judicial District of          File No. CV950705783
Hartford-New Britain at Hartford

Memorandum filed August 12, 1996

*Ann E. Lynch*, assistant attorney general, for the named plaintiff et al.

*Robert F. Vacchelli*, assistant attorney general, for the plaintiff department of correction.

*Linsley J. Barbato*, assistant attorney general, for the named defendant et al.

*Connecticut Legal Services*, for the defendant Rafael et al.

MALONEY, J. The named plaintiff, state of Connecticut-Unified School District #1 (plaintiff), is a special school district established within the department of correction pursuant to General Statutes § 18-99a. The plaintiff appeals a decision of the named defendant, the state department of education, holding the plaintiff liable to provide educational services to the defendant Rafael,[1] a child requiring special education, for the period during which Rafael had been in the custody of the department of correction as a pretrial detainee. The department of education rendered its decision, which contained a number of other orders, pursuant to General Statutes (Rev. to 1995) § 10-76h. The plaintiff's appeal is authorized by subsection (d) (4) of that statute and by General Statutes § 4-183. The court finds in favor of the plaintiff.

Certain essential facts are not in dispute and provide the framework for the court's decision. Rafael is nineteen years old and suffers from a profound learning

---

[1] In accordance with the spirit and intent of General Statutes § 10-76h (d) (1), the name of the defendant child is not disclosed.

disability and emotional and social maladjustment. At all relevant times, Rafael has been a child requiring special education within the meaning of General Statutes § 10-76a et seq. and a child with disabilities within the meaning of the federal Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq.

Rafael and his mother are residents of Meriden, and Rafael entered the public school system there in 1986. The Meriden board of education identified Rafael as a child requiring special education and placed him in an appropriate program commencing in 1986.

Rafael and his mother left Meriden for Puerto Rico in 1990 and returned to Meriden in 1992. At that time, Meriden officials determined that he was in need of treatment and education in a residential program, but Rafael refused to remain in the program provided for him.

On May 10, 1993, the police arrested Rafael on various felony charges and the court ordered him to be held in jail, in the custody of the department of correction, unless and until he posted the required bond. Rafael remained in custody until January 14, 1994, when he posted bond, a period of nearly eight months. During this period of incarceration, the department neither offered Rafael an individualized special education program nor did he attend any special education classes. During this period, Rafael was transferred between the New Haven and Hartford community correction facilities a total of twenty-seven times in order to meet his court appearance commitments in the New Haven and Hartford courts.

Upon his release from prison, the Meriden board of education resumed control of Rafael's special education program. This program was interrupted, however, on July 5, 1994, when Rafael was arrested on new felony charges. This time he remained in custody until January 20, 1995.

In August, 1994, while Rafael was in custody as a pretrial detainee for the second time, the Meriden board of education's planning and placement team met and developed an individual educational plan for Rafael that prescribed a residential special education program for him upon his release from custody.

During this second period of pretrial detention, Rafael was transferred between correctional institutions eighteen times. Also, twice during this period, Rafael signed statements that he did not want to attend school. Nevertheless, during that period, on October 20, 1994, Rafael's mother wrote the department of education requesting a hearing in accordance with § 10-76h to review Rafael's special education needs.

In November, 1994, the plaintiff commenced a special education program for Rafael while he was in the custody of the department of correction. Although it had conducted some testing, the plaintiff did not convene a planning and placement team meeting. The plaintiff's attempt to do so in December, 1994, was aborted because of the illness of the school district principal and the unavailability of Rafael. There was no other meeting. Without a meeting of the planning and placement team, the plaintiff could not and did not develop a new individual educational plan or modify the most recent Meriden individual education plan. Rafael was enrolled in the plaintiff's school system in November, 1994, however, and attended some classes. Evidence in the administrative record discloses that he attended classes on six out of a possible forty-six school days. There were several reasons for this plainly dismal record, including court appearances, transferring between facilities and Rafael's own recalcitrance.

On January 20, 1995, all of the charges against him were finally resolved and Rafael was placed on probation. A condition of his probation was that he enter a

residential treatment and education program operated by the Brown and Sullivan School (Brown and Sullivan) in Suffield. He is presently still a resident of that program.

During the course of the administrative hearing before the state board of education, while Rafael was enrolled as a resident at Brown and Sullivan, the Meriden board of education agreed to pay for Rafael's special education services at that school until June 30, 1997, when he will have reached the age of twenty-one and will no longer be eligible for such services under applicable statutes.

On March 7, 1995, following the hearing and following Rafael's release from custody, the hearing officer rendered her final decision. The hearing officer identified the principal issue for decision to be whether the plaintiff is liable to Rafael for special education services to compensate him for the denial of any such services that were due him during the periods when he was in the custody of the department of correction as a pretrial detainee. The hearing officer held that the plaintiff is liable for compensatory special education services and that such services must be rendered by the Brown and Sullivan school. Those issues are now before this court.

In her decision, the hearing officer set forth detailed findings of fact and conclusions of law, which may be summarized as follows: (1) during the eight months of Rafael's first period of incarceration, the plaintiff failed to identify Rafael as a child in need of special education; (2) during that period, the plaintiff failed to hold a planning and placement team meeting and to develop an individual educational plan for Rafael; (3) during that period, the plaintiff failed to offer Rafael any educational services; (4) during Rafael's second period of incarceration, the plaintiff failed to hold a planning and

placement team meeting concerning his special education needs; (5) during that second period of incarceration, the plaintiff failed to develop an individual educational plan or to modify Meriden's existing individual educational plan to accommodate Rafael's current circumstances; (6) the special education program that the plaintiff did implement for Rafael did not comply with state law requiring minimum school hours per day; (7) federal and state statutes and regulations required the plaintiff to convene a planning and placement team meeting and develop and implement an individual educational plan for Rafael at the beginning of each of his periods of incarceration; and (8) Brown and Sullivan was, as of the date of the hearing officer's decision, providing an appropriate special education program for Rafael.

Based on the aforementioned findings of fact and conclusions of law, the hearing officer concluded further that the plaintiff is liable to Rafael for ten and one-half months of educational services to compensate him for the services that it failed to provide him during the entire first period of his incarceration and during the last two and one-half months of his second period of incarceration.

The hearing officer ordered that the plaintiff provide the compensatory education at Brown and Sullivan or at a comparable residential facility. The parties concede that this order means that the plaintiff is held liable for the full cost of Rafael's placement at Brown and Sullivan for ten and one-half months beginning July 1, 1997, when the obligation of the Meriden board of education will expire. At that time, Rafael will have reached the age of twenty-one.

Based on her findings and conclusions, the hearing officer also issued supplementary orders requiring that the plaintiff: (1) hire someone to fill the vacant position in the school district responsible for administering its special education program; (2) establish a "data collec-

tion system" to record when pretrial detainees are offered educational services; and (3) develop a procedure to transfer a scheduled planning and placement team meeting, with notice to all participants, to the correctional institution to which the detainee has been transferred. This last order was apparently inspired by the snafu that occurred in Rafael's case in December, 1994, when he was transferred from one correctional institution to another after a planning and placement team meeting had been scheduled at the first institution. The planning and placement team meeting had to be canceled because Rafael and the correctional school principal could not attend.

The hearing officer also ordered the department of education to take certain remedial steps, but that department has not appealed or otherwise objected to those orders and they are not before the court.

The plaintiff appealed the hearing officer's decision, naming the state board of education and Rafael as defendants. The state board of education takes the position that it is only a nominal defendant and has not participated in the defense of its hearing officer's decision.

Subsequent to the filing of this appeal, both the plaintiff and Rafael moved for permission to present evidence to the court in addition to that contained in the administrative record. The court granted both motions in accordance with § 10-76h (d) (4) (B) and held a hearing for that purpose.

Based on the evidence adduced at the hearing, the court finds the following additional facts. The charge for placement of a student like Rafael at Brown and Sullivan for ten and one-half months beginning July 1, 1997, will be between $116,200 and $141,000. The amount that the plaintiff would have spent for a special education program for Rafael during the ten and one-half months in 1993–95 when he was incarcerated would

have been $3100. To this should be added $24,700, the cost of custodial care, for a total cost of "residential" special education at the department of correction during 1993–95 of $27,800. The services and environments offered by the two institutions, the plaintiff and the department of correction on one hand and Brown and Sullivan on the other, are vastly different, of course.

Following the evidentiary hearing in this court, the parties submitted briefs and presented oral arguments. The court subsequently requested supplemental briefs, which Rafael filed on April 24, 1996, and the plaintiff filed on April 25, 1996. On May 2, 1996, Rafael filed an objection to portions of the plaintiff's brief, which objection the court has overruled.

As set forth in the briefs, the plaintiff advances five arguments in support of its appeal: (1) that the hearing officer exceeded the scope of her authority in issuing the supplementary orders not specifically related to Rafael's educational needs; (2) that any violations of state or federal special education laws committed by the plaintiff were not so serious as to justify the award of compensatory special education; (3) that the hearing officer failed to give sufficient consideration to the conduct of Rafael and his mother; (4) that the hearing officer erroneously concluded that state and federal laws require the plaintiff to provide special education services to pretrial detainees; and (5) that the hearing officer erroneously found that Brown and Sullivan is an appropriate institution to provide compensatory education to Rafael.

I

SUPPLEMENTARY ORDERS

It is undisputed that the state department of education conducted the hearing in the present case pursuant to § 10-76h. General Statutes (Rev. to 1995) § 10-76h (a)

provides that the purpose of the hearing shall be "to review: (1) The diagnosis, (2) the evaluation of special education programs provided or proposed for such child or pupil, (3) the exclusion or exemption from school privileges of such child or pupil or (4) any other matter concerning the child's special education or right to special education." In short, the purpose of the hearing is to review the special education needs of a particular child and how those needs should be met by the local board or unified school district responsible for providing educational services to the child.

Subsection (d) (1) of § 10-76h tracks subsection (a) in granting the hearing officer authority to order remedial action after hearing the case. General Statutes (Rev. to 1995) § 10-76h (d) (1) thus provides in pertinent part that the "hearing officer . . . shall have the authority to confirm, modify, or reject any diagnosis, evaluation, educational program prescribed, exclusion or exemption from school privileges or any other matter concerning the child's special education or right to special education or to determine the appropriateness of an educational placement where the parent or guardian of a child requiring special education has placed the child in a program other than that prescribed by the planning and placement team, or to prescribe alternate special educational programs for the child or pupil." In short, the authority of a hearing officer acting pursuant to subsection (d) (1) of § 10-76h is limited to issuing orders that pertain to the special education needs of the child who was the subject of the hearing.

The supplementary orders issued by the hearing officer in the present case clearly went beyond the subject of Rafael's special education needs. These orders were directed at the plaintiff's administrative procedures in general. Since the orders are prospective in effect, they do not relate at all to Rafael, who had already been discharged from custody at the time the hearing officer

issued them. For that reason, the hearing officer had no authority under § 10-76h to issue the supplementary orders concerning filling the vacant position, developing specific procedures for dealing with pretrial detainees in need of special education services, and developing procedures for holding planning and placement team meetings. "Action taken by an administrative agency in excess of its statutory authority is void and without legal effect." *Young* v. *Chase*, 18 Conn. App. 85, 93, 557 A.2d 134 (1989). Accordingly, the plaintiff's appeal is sustained with respect to those orders.

## II

### VIOLATIONS OF SPECIAL EDUCATION LAWS

The plaintiff attacks virtually every one of the hearing officer's findings and conclusions which led to the determination that the plaintiff violated federal and state laws requiring a special education program for Rafael during the periods of his incarceration. The goal of the attack is to establish that the violations, if any, were not "gross" violations and, therefore, not sufficient to require the award of compensatory special education services. The plaintiff cites *Mrs. C.* v. *Wheaton*, 916 F.2d 69 (2d Cir. 1990), in support of this theory.

Before considering the merits of the plaintiff's arguments, it is appropriate to review the basic provisions of the applicable laws and regulations. As noted previously, the statutory and regulatory setting is the product of both federal and state enactments and the current applicable federal statute is the Individuals with Disabilities Education Act (federal act), codified at 20 U.S.C. § 1400 et seq. Its Connecticut counterpart is General Statutes § 10-76a et seq. The basic provisions of these statutes and their attendant regulations are not disputed. Any state which participates in the federal scheme by accepting federal subsidies must adhere to the requirements of the federal statutes and regulations.

Connecticut is a participant and thus subject to the federal act. The primary, overriding goal of these statutes and regulations is to guarantee to each child with a disability a free appropriate public education. *Hendrick Hudson District Board of Education* v. *Rowley*, 458 U.S. 176, 180–81, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1981); see also Regs., Conn. State Agencies § 10-76d-1.

Pursuant to the federal-state statutory scheme, each local or regional board of education and each unified school district, like the plaintiff, must establish a procedure and staff to identify and evaluate children with disabilities and to determine whether they are in need of special education. The board of education or school district must then convene a planning and placement team, which is composed of teachers and administrators specially trained and skilled in identifying and addressing the needs of children with disabilities. The child's parents must be afforded the opportunity to attend and to participate in meetings of the planning and placement team as well as the child, when appropriate.

"The free appropriate public education required by the [federal act] is tailored to the unique needs of the handicapped child by means of an individualized educational program." (Internal quotation marks omitted.) *Hendrick Hudson District Board of Education* v. *Rowley*, supra, 458 U.S. 181; see also Regs., Conn. State Agencies § 10-76d-11 (mandating development of individual educational plan for each child in need). The individual educational plan is thus the absolutely critical ingredient in the special education program for a child in need. As noted, federal and state statutes and regulations unequivocally require the responsible agency to develop an individual educational plan in the case of every child with a disability. The development of such an individual educational plan is the primary goal of the child's planning and placement team, acting in conjunction with the parent and the child.

Both federal and state statutes afford the child and the parents administrative and judicial relief in cases where the child has been denied the benefits of the law. The courts have stressed two general criteria: (1) that the responsible school board must follow precisely the procedural requirements of the law; and (2) that the substance of the child's program must provide appropriate educational benefits. *Hendrick Hudson District Board of Education* v. *Rowley*, supra, 458 U.S. 206–207; *Puffer* v. *Raynolds*, 761 F. Sup. 838, 850–51, (D. Mass. 1988) (emphasizing necessity of adhering to procedural requirements of law; in that case, development of individual educational plan). The failure of a school board to satisfy either of these criteria provides a basis for administrative or judicial relief.

Various remedies are available to a child who has been denied the benefits of the special education laws. In the present case, as noted, the hearing officer awarded compensatory education to be provided after Rafael's Meriden supported program expires. This would continue for ten and one-half months after his twenty-first birthday. Such compensatory education after the child has become otherwise ineligible because of age is a legal remedy under Connecticut and federal law. *Pihl* v. *Massachusetts Dept. of Education*, 9 F.3d 184, 188 (1st Cir. 1993); *Mrs. C.* v. *Wheaton*, supra, 916 F.2d 75.

In the present case, there is ample evidence in the record to support the hearing officer's finding that the plaintiff failed to convene a planning and placement team meeting and failed to develop an individual educational plan for Rafael during either of his periods of incarceration. Indeed, the plaintiff does not seriously dispute those findings. Rather, the plaintiff argues that it provided an acceptable alternative by following the individual educational plan developed for Rafael by the Meriden board of education in 1994. The plaintiff also

argues that its failure to convene a meeting of the planning and placement team to develop an individual educational plan was not a significant or "gross" violation of the law, because Rafael was a demonstrably unwilling student and his mother was apathetic in pursuing her son's educational needs. Neither of these arguments may be sustained.

With respect to the Meriden individual educational plan, the hearing officer found that "from November 4, 1994, to January 20, 1995, [Rafael] did not have an [individual educational plan] in place that reflected the program he was being offered. Conversely, the [individual educational plan] accepted by [the plaintiff] was not being implemented." This is not surprising in view of the fact that the individual eductional plan that has been developed by the Meriden board of education, which the court has reviewed in this record, was primarily aimed at Rafael's future education, after his release from custody and, therefore, was not tailored to the special circumstances of Rafael's incarceration or the educational services that the plaintiff could provide. In any event, the hearing officer's findings on this issue are plainly supported by substantial evidence in the record and may not be overturned by the court. *Connecticut Building Wrecking Co.* v. *Carothers*, 218 Conn. 580, 601, 590 A.2d 447 (1991).

With respect to the failure to hold a planning and placement team meeting or to develop an individual educational plan, the plaintiff argues that the hearing officer was required to find that these were "gross" violations of the procedural requirements of the law in order to justify the award of compensatory education. Since the hearing officer does not explicitly state that she found the violations to be "gross," the plaintiff argues, the award of compensatory education was improper. The plaintiff cites *Mrs. C.* v. *Wheaton*, supra,

916 F.2d 69, in support of this theory. That case does not, however, support the plaintiff's position.

In *Mrs. C. v. Wheaton*, supra, 916 F.2d 73, the court held that the state of Connecticut must comply with the procedural safeguards of the federal act before it terminates the special education program of a child who is a ward of the state. In that case, the child in question was twenty years old and had consented to the termination. The state had failed, however, to develop an individual educational plan supporting the termination. In addition, the state had failed to provide the child's parent with an opportunity to participate in the decision to terminate the program. Id. The court held that these procedural defects sufficed to justify the award of compensatory education. Id., 75. The court implicitly acknowledged that every procedural violation of the federal act may not justify an award of compensatory education, citing *Burr by Burr v. Ambach*, 863 F.2d 1071 (2d Cir. 1988), vacated sub. nom. *Sobol v. Burr*, 492 U.S. 902, 109 S. Ct. 3209, 106 L. Ed. 2d 560, reaff'd, *Burr v. Sobol*, 888 F.2d 258 (2d Cir. 1989), cert. denied, 494 U.S. 1005, 110 S. Ct. 1298, 108 L. Ed. 2d 475 (1990), where such compensation was awarded only on the basis that the provisions of the federal act had been " 'grossly violated.' " *Mrs. C. v. Wheaton*, supra, 75. The court held, however, that the failure to develop an individual educational plan with the parent's participation essentially deprived the child in that case of the needed special education and, for that reason, justified "a claim for compensatory educational relief." Id.

The federal court's decision in *Puffer v. Raynolds*, supra, 761 F. Sup. 838, expressly holds that the failure to comply with the individual educational plan requirement of the law is alone sufficient to justify compensatory relief. The hearing officer had ruled that the failure was inconsequential because the school system had offered a program of special education that it had

devised for the child informally. The court reversed, stating: "I am not as unconcerned with procedure as the hearing officer is here. Merely because the same result may—or may not—have been reached *had* proper procedures been followed is not determinative of this case. There are some independent values served by following proper procedures . . . . '[P]articularly in a statutory scheme such as the [federal act] where great emphasis is placed upon procedural safeguards, we must assume that Congress intended some kind of relief when . . . a handicapped child is deprived of the procedural safeguards granted by [the federal act]' . . . ." (Citation omitted; emphasis in original.) Id., 851, quoting *Quackenbush* v. *Johnson City School District*, 716 F.2d 141, 147 (2d Cir. 1983).

In the present case, the hearing officer characterized the procedural errors as "too pervasive to be considered harmless." She also found that the evidence in the record concerning the substance of Rafael's education while in custody indicated that it produced no "educational progress," thus failing the second test of *Hendrick Hudson District Board of Education* v. *Rowley*, supra, 458 U.S. 206–207.

A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides in pertinent part that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . ."

Furthermore, "[j]udicial review of conclusions of law reached administratively is also limited. The court's

ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* 219 Conn. 51, 57–58, 591 A.2d 1231 (1991).

In the present case, the hearing officer found that the procedural errors committed by the plaintiff and the inadequacy of the special education offered to Rafael by the plaintiff, justified awarding him compensatory special education following his reaching the age of twenty-one. Based on undisputed evidence in the record, in particular the lack of a proper individual educational plan and the requirements of federal and state law, as interpreted by the authorities cited, the court cannot find that the hearing officer's decision to order compensatory education for Rafael was unreasonable or an abuse of her discretion.

## III

### THE CONDUCT OF RAFAEL AND HIS MOTHER

In its brief on appeal, the plaintiff contends that "the hearing officer should have taken into consideration that [Rafael] refused to go to school until he enrolled in [the] school [operated by the plaintiff] in November, 1994. Even then, there were many occasions when [Rafael] threw away his books, refused to get up and refused to go to school." This contention may not be sustained.

The evidence that Rafael was reluctant and occasionally refused to attend the classes conducted by the plaintiff is undisputed. The hearing officer did not fail to consider this conduct. She specifically noted it in her decision.

It is likewise undisputed that Rafael was not and perhaps never will be suited for a conventional school

program. In this regard, there is abundant evidence in the record, also cited throughout the hearing officer's decision, that Rafael is severely handicapped emotionally and intellectually.

In her decision, the hearing officer also cited the prison environment and the demands of Rafael's court schedules as factors tending to undermine his motivation to attend the plaintiff's classes.

The hearing officer thus took into consideration several important factors, including Rafael's conduct, in reaching her decision. Implicit in that decision is the view that Rafael's recalcitrance was caused, at least in part, by his psychological condition and the conflicting demands of the prison environment. As noted earlier, it is axiomatic that "[j]udicial review of conclusions of law reached administratively is . . . limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, supra, 219 Conn. 57–58.

In the present case, the hearing officer ultimately determined that the plaintiff was at fault in not formulating an individualized educational plan for Rafael. Such a plan ideally would have addressed all of the obstacles in the path of Raphael's education while he was in custody, including his lack of motivation. It was neither unreasonable nor an abuse of discretion, therefore, for the hearing officer to place major emphasis on the failure of the plaintiff to comply with the law in that regard and to discount Rafael's lack of cooperation.

The plaintiff's allegations concerning Rafael's mother are unclear and inadequately briefed. As it appears from the record, Rafael's mother was involved in most of the significant events concerning his education, and, of

course, it was she who requested the hearing to review her son's educational program and to set these proceedings in motion. The plaintiff's argument that the mother's action or inaction should be a basis for reducing Rafael's educational opportunities may not be sustained.

## IV

## PRETRIAL DETENTION

The statutes that create the plaintiff and establish its obligation to provide special education services to persons in the custody of the department of correction are General Statutes (Rev. to 1995) §§ 18-99a and 10-15d. General Statutes (Rev. to 1995) § 18-99a (a) provides: "The commissioner of correction may establish a school district within the state department of correction for the education or assistance of any person sentenced or transferred to any institution of the department until released from its control, including but not limited to any person on parole. The school district shall be known as State of Connecticut-Unified School District #1." General Statutes (Rev. to 1995) § 10-15d provides in pertinent part: "[A]ll provisions of the general statutes concerning education . . . shall apply to the operation of the . . . State of Connecticut-Unified School District #1 established pursuant to section 18-99a within the department of correction . . . ."

The issue presented by the present case is whether the phrase "any person sentenced or transferred to any institution of the department [of correction]" in General Statutes (Rev. to 1995) § 18-99a excludes persons, like Rafael, who are held in the custody of the department of correction prior to sentencing. The plaintiff argues that the plain words of the statute do not extend its obligation to provide educational services to pretrial detainees.

The plaintiff argues also that the legislative history of the penal statutes supports the interpretation that § 18-99a applies only to those persons who have been sentenced to the custody of the department of correction after conviction of a crime. In this regard, the plaintiff points out that prior to 1979, General Statutes (Rev. to 1977) § 18-84 defined the terms "inmate" and "prisoner," wherever those terms are used in the General Statutes, as "any person sentenced or transferred to any institution of the department. . . ." At that time, § 18-99a read the same as it does now. Until 1979, therefore, the two statutes used the same language to define "inmates" and "prisoners" and those persons to whom the department of correction is obligated to provide educational services through the plaintiff.

In 1979, the legislature expanded the definition of "inmate" and "prisoner" so that General Statutes (Rev. to 1981) § 18-84 now defines those terms, wherever used in the General Statutes, as meaning "any person in the custody of the commissioner of correction or confined in any institution or facility of the department. . . ." That new definition in § 18-84 would clearly encompass persons held prior to sentencing in lieu of posting bond, like Rafael, in addition to those who had been sentenced after conviction.

The legislature has not, however, changed the definition of those persons entitled to receive educational services and assistance from the plaintiff pursuant to General Statutes (Rev. to 1995) § 18-99a. They are still defined as persons "sentenced,"[2] and they are not designated as "inmates" or "prisoners." The legislative history of the applicable statutes suggests, therefore, that § 18-99a should be interpreted as excusing the plaintiff

[2] Neither Rafael nor the plaintiff contends that the phrase "transferred to" refers to a person who has not also been "sentenced." The court does not, therefore, consider whether that phrase has any special significance in the context of the present case.

from the obligation to provide education services and assistance to pretrial detainees who have not been sentenced. Support for such a result may be found in familiar rules of statutory interpretation. "When a provision is included in one statute and omitted in a related statute, courts presume that the omission was intentional." *Sharp* v. *Wyatt, Inc.*, 31 Conn. App. 824, 853 n.19, 627 A.2d 1347 (1993), aff'd, 230 Conn. 12, 644 A.2d 871 (1994), citing *Caron* v. *Inland Wetlands & Watercourses Commission*, 222 Conn. 269, 277, 610 A.2d 584 (1992).

The court's inquiry as to the obligation of the plaintiff to a child in need of special education may begin with an analysis of § 18-99a in accordance with the ordinary rules of statutory construction, but it may not end there. The primary source of the state's obligation to provide special education to a child in need is the federal act. "The Act[3] represents an ambitious federal effort to promote the education of handicapped children, and was passed in response to Congress' perception that a majority of handicapped children in the United States were either totally excluded from schools or [were] sitting idly in regular classrooms awaiting the time when they were old enough to drop out." (Internal quotation marks omitted.) *Hendrick Hudson District Board of Education* v. *Rowley*, supra, 458 U.S. 179. "The [act] provides federal funds to states that promise to provide at minimum a 'free appropriate public education' for all handicapped children within the state . . . . Connecticut has chosen to participate in the [act] and has enacted legislation to implement the [a]ct's requirements. See Conn. Gen. Stat. § 10-76h." (Citation omitted.) *Mrs. C.* v. *Wheaton*, supra, 916 F.2d 71. The

---

[3] The act referred to in *Hendrick Hudson District Board of Education* and in the other cases decided prior to 1991 and cited in this opinion, is the Education of the Handicapped Act, the predecessor to the Individuals with Disabilities Education Act. There are no differences between the two federal acts that are relevant to the present case.

mandate to participating states to provide free appropriate public education to children with disabilities extends to any such children who are in state custody as pretrial detainees. *Donnell C.* v. *Illinois State Board of Education*, 829 F. Sup. 1016, 1020 (N.D. Ill. 1993).

Although the holding of the Illinois federal district court in *Donnell C.* is not controlling on this court, the federal court's reasoning is strongly persuasive. The scope of the federal law, imposed on participating states, extends to cover "all" children with disabilities. That does not mean all children except those in pretrial detention. See 34 C.F.R. § 300.2 (b) (4) (provides that act applies to children in correctional institutions); see also *Donnell C.* v. *Illinois State Board of Education*, supra, 829 F. Sup. 1020. Based on the authorities previously cited, this court concludes that the federal act requires Connecticut to provide special education to children in need, like Rafael, who are in the custody of the department of correction as pretrial detainees, prior to sentencing.

The plaintiff argues that even if Rafael was entitled to receive free special education during the period of his pretrial incarceration, pursuant to federal laws and regulations, the state statute, § 18-99a, does not obligate the plaintiff to provide that education.

The only substantive objection to imposing on the plaintiff the obligation to provide special education to pretrial detainees is that the language of § 18-99a would seem to restrict the obligation to sentenced prisoners. The result of that restrictive reading of § 18-99a, however, would be totally to deprive children with disabilities who are in pretrial custody of the special education that those children are entitled to receive under federal law.

Under § 18-99a, the plaintiff is the sole agency responsible for providing educational services within the

department of correction. Under § 10-15d, those education services include special education services to children with disabilities. If the plaintiff is absolved of that responsibility with respect to those in Rafael's circumstances, who or what will fill the void?

The plaintiff's suggestion that the cities and towns where pretrial detainees reside should be responsible for their education while they are in custody has scant support in the law and the practical difficulties appear insuperable. General Statutes § 10-76d (e), cited by the plaintiff, simply does not pertain to children in the custody of the department of correction. As a practical matter, local boards of education cannot contract with private agencies to provide special education services for such incarcerated children because the children are not free, literally, to receive the services. And, again for obvious practical reasons, the various local boards whose resident children are incarcerated cannot routinely send their own teachers into the different correctional institutions to conduct special education classes for those children on a regular basis. At least, there is nothing in the evidentiary record of the present case that suggests that such a program would be a possibility.

In short, there is nothing in the law or in the facts of the present case to indicate that any local or state agency other than the plaintiff had or should have had the responsibility for providing special education to Rafael while he was in the custody of the department of correction as a pretrial detainee. It follows that Rafael would totally be deprived of the mandated special education if § 18-99a were interpreted to excuse the plaintiff of that responsibility.

"[S]tate law can be preempted in either of two general ways. If Congress evidences an intent to occupy a given field, any state law falling within that field is preempted.

. . . If Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law . . . or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." (Internal quotation marks omitted.) *Kenny* v. *Kenny*, 226 Conn. 219, 224, 627 A.2d 426 (1993). With respect to the education of children with disabilities in Connecticut, Congress has not entirely displaced state regulation. Rather, as noted, it has delegated to the state the task of providing the educational services required by federal law. This means that state law on the subject is preempted only to the extent that it would otherwise block "the accomplishment of the full purposes and objectives of Congress." (Internal quotation marks omitted.) Id. In the present case, the state statute in question, § 18-99a, blocks the objective of Congress—to provide special education to all children with disabilities—if the statute is interpreted to exclude such children while they are held in custody as pretrial detainees. In accordance with the doctrine of preemption, therefore, such an interpretation must be rejected.

For all of the foregoing reasons, the court holds that § 18-99a requires the plaintiff to provide special education services and assistance to eligible children while they are in the custody of the department of correction as pretrial detainees, prior to sentencing.

V

APPROPRIATENESS OF BROWN
AND SULLIVAN

The plaintiff contends that the special education program presently offered by Brown and Sullivan is inappropriate for Rafael. Therefore, the plaintiff argues, the hearing officer abused her discretion in ordering the

plaintiff to provide the required compensatory education for Rafael at that school in the future. The plaintiff's claims in this regard may be summarized as follows: (1) Brown and Sullivan has failed to implement the individual educational plan established for Rafael by the Meriden board of education and currently in effect; (2) Brown and Sullivan's program does not provide adequate educational services; (3) the cost of Brown and Sullivan's program greatly exceeds the maximum cost of the program that the plaintiff would have provided during Rafael's incarceration even if the plaintiff had fully complied with the law.

The claims that the services rendered by Brown and Sullivan are inadequate either for implementing Rafael's current individual educational plan or for providing a quality education are essentially based on the plaintiff's analysis of the evidence in the administrative record and the evidence presented at the supplemental hearing conducted by the court.

There is no question that Brown and Sullivan follows an educational philosophy and offers a program that may by characterized as unorthodox. Certainly, the evidence in the record concerning the philosophy and the program is susceptible to different interpretations and could support widely different findings and conclusions by different adjudicators.

As clearly spelled out in her final decision, the hearing officer, who was delegated the task of making the required findings and conclusions, determined that Brown and Sullivan was "an appropriate special education placement for [Rafael]" following his discharge from custody in January, 1995. Basic principles of administrative law require the court to accept that determination. "The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse

of its discretion." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* supra, 219 Conn. 58. Similarly, "[w]ith regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." (Internal quotation marks omitted.) Id., 57. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." (Internal quotation marks omitted.) *Hospital of St. Raphael* v. *Commission on Hospitals & Health Care,* 182 Conn. 314, 318, 438 A.2d 103 (1980). The court may not, therefore, overturn the administrative decision merely because it disagrees with the hearing officer's assessment of the quality of appropriateness of the Brown and Sullivan program. Nevertheless, the court does conclude that the case must be remanded so that the department of education may revise its decision requiring the compensatory education to be rendered by Brown and Sullivan.

The question of cost leads the court to consider the hearing officer's decision from a slightly different perspective. As noted earlier in this opinion, undisputed evidence presented at the hearing before this court established that the cost of the education at Brown and Sullivan (about $125,000) vastly exceeds the amount that the plaintiff and the department of correction would have paid for Rafael's education during the period for which compensation is owed (about $28,000, including the cost of confinement). The plaintiff argues that this would be a "windfall" for Rafael and is not intended under the law. Instead, the plaintiff argues, Rafael is entitled to compensatory education limited to reimbursement of the amount that the plaintiff would have expended in 1993–95 if it had complied with the law. This argument may not be sustained.

The hearing officer determined that Rafael is entitled to compensatory educational services, to be provided in the future by the plaintiff. This was an entirely appropriate remedy, given that Rafael and his parents were obviously not able to obtain the denied education themselves and "front" the costs. *Pihl* v. *Massachusetts Dept. of Education,* supra, 9 F.3d 189; *Mrs. C.* v. *Wheaton,* supra, 916 F.2d 75. Such compensatory educational services must, of course, be appropriate for the student at the time he receives them in order to comply with the requirements of the law. *Straube* v. *Florida Union Free School District,* 801 F. Sup. 1164, 1181 (S.D.N.Y. 1992); *Puffer* v. *Raynolds,* supra, 761 F. Sup. 863.

The hearing officer's decision that the plaintiff must provide educational services to Rafael in the future to compensate him for such services as were denied him while he was in custody was correct. The court concludes, however, that the hearing officer was in error in ordering, in her 1995 decision, that such services be provided at Brown and Sullivan or at a comparable institution in 1997. The error is that the order specifying Brown and Sullivan was premature.

The letter and spirit of the federal and state special education statutes and regulations require that the special education program for a child with disabilities be individually designed to address the child's specific needs. Furthermore, the statutes and regulations require that the individualized education program be continuously reexamined so that it will accommodate the child's *changing* needs. Contrary to the plaintiff's assertion, this requirement that the special education program be designed to meet the child's changing circumstances applies with particular force to compensatory education to be provided in the future. See *Straube* v. *Florida Union Free School District,* supra, 801 F. Sup. 1181; *Puffer* v. *Raynolds,* supra, 761 F. Sup. 853.

The hearing officer's decision in the present case, however, seeks to prescribe a specific institution and its specialized residential program for Rafael more than two years in advance of the time when the services are to be rendered. The problem is, as the *Straube* court observed in similar circumstances, that Rafael's future educational needs are not immediately knowable. He may or may not need a residential program in 1997. He may or may not need a more orthodox academic program in 1997. He may or may not need more intensive psychological counseling in 1997. He may or may not need constant one-on-one supervision in 1997. He may even decline any further educational services in 1997.

The questions raised here illustrate that, in order to comply fully with the law and regulations in the present case, it will be necessary to convene a planning and placement team meeting in 1997 to evaluate Rafael's abilities and needs at that time so that an individualized educational plan can be developed that fully meets those needs. The court concludes, therefore, that the present case must be remanded to the department of education for a new decision that will provide for the design of an individual educational plan for Rafael in 1997 that will cover the compensatory education to which he is entitled at that time.

In accordance with § 4-183 (j), the plaintiff's appeal is sustained. In accordance with § 4-183 (k), the case is remanded to the department of education. The department of education is ordered to issue a new decision requiring the plaintiff to provide ten and one-half months of compensatory special education for Rafael. The decision shall require the plaintiff to convene a meeting of a planning and placement team for Rafael at a time in 1997 to be determined by the department. The membership of the team shall include representatives of the plaintiff and others to be determined by the department of education in accordance with applicable law and regulations. In its

decision, the department of education shall require the development of an individualized educational plan in 1997 to cover the compensatory education program to which Rafael is entitled at that time.