JEFFREY PAGANO ET AL. *v.* EDGARDO
IPPOLITI ET AL.
(SC 15851)

Berdon, Norcott, Palmer, McDonald and Peters, Js.

Argued March 19—officially released July 28, 1998

*Paul L. Bollo*, for the appellants (defendants).

*Louis N. George*, with whom was *John S. Rubrich*, for the appellees (plaintiffs).

*Opinion*

PETERS, J. The issues in this case concern the enforceability of oral agreements under which employees have a percentage share in profits expected to be generated by their employer's real property development project. The plaintiffs, Jeffrey Pagano and Gary Dayton, filed a twelve count complaint charging the defendants Edgardo Ippoliti, Marcia Ippoliti, Michael Ippoliti and Eppoliti Enterprises, Inc.,[1] with breach of contract and other ancillary claims.[2] The defendants denied the plaintiffs' allegations, and, in addition, filed special defenses raising, inter alia, claims under the statute of frauds and the equitable doctrines of laches and unclean hands.[3] A jury found in favor of the plaintiffs on their breach of contract claims and awarded them compensatory and punitive damages. The trial court, *Stodolink, J.*, denied the defendants' motions for a new trial and for a directed verdict and rendered judgment in favor of the plaintiffs in accordance with

---

[1] The defendants have been represented jointly throughout this litigation, and the jury found them to be liable jointly. Accordingly, unless the context requires the contrary, we will refer to them jointly as the defendants.

[2] The plaintiffs also claimed fraud, misrepresentation, violation of the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes § 42-110a et seq.; unjust enrichment and promissory estoppel. The jury found against the plaintiffs on all these counts, and their merits are not before us on this appeal.

[3] The defendants also filed counterclaims against the plaintiffs alleging breach of contract, misrepresentation and theft of documents on the part of the plaintiffs. The jury found against the defendants on each of their counterclaims. Their validity is not an issue before us on this appeal.

the jury verdict. The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book (1998 Rev.) § 65-1, formerly § 4023, and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Pagano had been an employee of the defendants for seven years when, in 1985, the parties entered into an oral agreement that Pagano would receive a 20 percent interest in the net proceeds of a contemplated development project on a designated parcel of property in Ridgefield. As consideration, Pagano agreed to continue to provide his services and to pay 20 percent of the interest payments on a promissory note that was part of the financing of the property. Pagano performed as promised and made additional payments on the note when it was refinanced. In 1988, the parties modified their agreement to discharge Pagano from further obligations on the refinanced note in return for his relinquishment of any right to future merit raises.

In 1989, the defendants hired Dayton to serve as the project director for the development of a life care facility on the project property. As part of Dayton's compensation, he was promised a 2.5 percent interest[4] in the net proceeds of the project. By the fall of 1992, the life care development project had focused on the feasibility of obtaining governmental funding by having a not-for-profit organization purchase the property and operate the facility.

On June 8, 1993, despite some progress toward that goal, the plaintiffs and Edgardo Ippoliti had a heated

---

[4] The defendants first agreed that Dayton would have a 2.25 percent interest, but that figure was subsequently increased. The parties also agreed that Dayton's interest was to be vested at the rate of one third per year over the course of three years.

disagreement about the progress that was being made on the project. As a result, the plaintiffs' employment relationship with the defendants came to an end. Mutual efforts at resolving the dispute between the parties were unsuccessful. Although the defendants claimed that the plaintiffs had left their employment voluntarily, in fact, Edgardo Ippoliti discharged both of them from further employment by the defendants.

The project property was not developed further for economic reasons and because, soon after having discharged the plaintiffs, Edgardo Ippoliti suffered a heart attack. The failure of the project to materialize had an adverse financial impact on both the plaintiffs and the defendants. At the time of trial, the underlying real property was mortgaged and facing foreclosure.[5]

The defendants have raised seven issues on appeal. The defendants maintain that they are entitled to a directed verdict or a new trial because the trial court improperly: (1) permitted the jury to consider the plaintiffs' tort claims although they were barred by the statute of limitations; (2) permitted the jury to consider the plaintiffs' equitable claims even though those claims were barred by the doctrines of laches and unclean hands; (3) permitted the plaintiffs to present their causes of action without joining Dawn Pagano, an indispensable party; (4) dismissed the defendants' special defenses invoking the provisions of the statute of frauds relating to real property and to contracts not to be performed within one year; (5) allowed certain documents into evidence; (6) refused to submit to the jury certain interrogatories proposed by the defendants; and (7) refused to set aside the jury's verdict even though

---

[5] In 1997, during the trial in this case, Edgardo Ippoliti and Marcia Ippoliti filed a petition in bankruptcy. The trial was able to go forward because the bankruptcy judge, Shiff, C. J., granted the plaintiffs relief from the stay that attached upon the filing of the petition. At the plaintiffs' request, the jury was not informed about the existence of the bankruptcy petition.

it was against the weight of the evidence.[6] We disagree with all of the defendants' claims, and, therefore, affirm the judgment.

## I

Several of the defendants' contentions cannot be sustained in light of the present state of the record. Although the jury returned a general verdict in favor of the plaintiffs, its answers to interrogatories indicated its rejection of the plaintiffs' tort and CUTPA claims. The plaintiffs so concede. At this juncture, therefore, we need not consider the merits of any antecedent rulings on the claims that the plaintiffs can no longer pursue. Further, because of the general verdict in the plaintiffs' favor, we need not consider the merits of, or defenses to, their equitable claims as long as the plaintiffs' verdict can be sustained on their contract counts.[7] The defendants, therefore, cannot succeed on the arguments that they have raised in their first two issues because those issues are no longer relevant to the judgment from which they appeal.

## II

We consider next the argument raised in the defendants' third and fourth grounds for appeal: that the trial court improperly ruled on their various legal defenses challenging the validity of the plaintiffs' claims for breach of contract. We are not persuaded.

To a large extent, the defendants' arguments rest on their assertion that each of the oral contracts that the plaintiffs have sought to enforce was a contract concerning an interest in land, rather than, as the plaintiffs have maintained throughout, a contract concerning a financial interest in the proceeds of land owned outright

---

[6] We have listed these issues in the order in which we will address them.

[7] See, e.g., *Fabrizio* v. *Glaser*, 237 Conn. 25, 27, 675 A.2d 844 (1996); *Gajewski* v. *Pavelo*, 229 Conn. 829, 835, 643 A.2d 1276 (1994).

by the defendants. During the trial, the plaintiffs expressly defined their contract claims as claims for damages arising out of the loss of their financial, rather than their real property, interests in the development project.[8] The trial court so instructed the jury. It is axiomatic that the plaintiffs were entitled to frame their causes of action in whatever way they deemed most appropriate. It is equally axiomatic that the jury is presumed to have reached its verdict in accordance with the instructions it had received from the trial court. Despite the defendants' argument to the contrary, the present posture of this case is that the jury found that the plaintiffs had proven the contracts that they had alleged to exist. As alleged and as proven, these contracts were not contracts conferring upon the plaintiffs any interest in the underlying real property itself.

The conclusion that the plaintiffs did not seek to enforce contract claims for interests in real property is a decisive answer to the defendants' argument that the judgment should be set aside because of the plaintiffs' failure to join Dawn Pagano as a party. The defendants maintain that Dawn Pagano was an indispensable party to any proceeding to adjudicate *her interest in the real property* at issue. Neither of the plaintiffs sought any such adjudication. Furthermore, the fact that Dawn Pagano cosigned a loan agreement with her husband, the named plaintiff, and permitted him to draw checks on their joint bank account did not establish that she had an independent interest in the contract claim that was adjudicated. The defendants have pointed to nothing in the pleadings, or in Dawn Pagano's trial testimony, to indicate that she had such an independent interest. Aware of the proceedings on the plaintiffs' claims, Dawn Pagano expressly testified at trial that she had no claim separate and apart from that being pursued by Jeffrey Pagano. In these circumstances, the

---

[8] At least one defendant, Marcia Ippoliti, testified to the same effect.

trial court proceeded properly even though Dawn Pagano had not been joined as a party by the plaintiffs. Her absence did not undermine the validity of the jury's verdict awarding damages only to the plaintiffs. *Hilton* v. *New Haven*, 233 Conn. 701, 721–22, 661 A.2d 973 (1995); *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 439, 572 A.2d 951 (1990); *Sturman* v. *Socha*, 191 Conn. 1, 6–7, 463 A.2d 527 (1983).[9]

The terms of the contracts that the plaintiffs consistently described, and presumably proved to the satisfaction of the jury, likewise create insurmountable obstacles for the defendants' claims pursuant to the statute of frauds. General Statutes § 52-550 (a).[10] The defendants raise these claims under the statute's real property provision, subdivision (4) of subsection (a), and its provision concerning agreements not to be performed within one year, subdivision (5) of subsection (a). With respect to both of those defenses to the plaintiffs' causes of action, the defendants claim that the

[9] The defendants mistakenly characterize the absence of an allegedly indispensable party as raising a question of subject matter jurisdiction. "[T]he plaintiffs' failure to join [another person] as an indispensable party did not implicate the trial court's subject matter jurisdiction . . . . Nevertheless, a court may refuse to proceed with litigation if a claim cannot properly be adjudicated without the presence of those indispensable persons whose substantive rights and interests will be necessarily and materially affected by its outcome. General Statutes § 52-102 (2); Practice Book § 99 [now § 9-18]." (Citations omitted.) *Hilton* v. *New Haven*, supra, 233 Conn. 721–22.

[10] General Statutes § 52-550 provides in relevant part: "Statute of frauds; written agreement or memorandum. (a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: (1) Upon any agreement to charge any executor or administrator, upon a special promise to answer damages out of his own property; (2) against any person upon any special promise to answer for the debt, default or miscarriage of another; (3) upon any agreement made upon consideration of marriage; (4) upon any agreement for the sale of real property or any interest in or concerning real property; (5) upon any agreement that is not to be performed within one year from the making

trial court improperly directed verdicts against them because they were entitled to have the jury determine their merits. We disagree with both claims.

The defendants' primary argument is that the plaintiffs' oral contracts were unenforceable because they were agreements concerning rights in real property. General Statutes § 52-550 (a) (4). Despite the plaintiffs' consistent assertions that their contracts conferred upon them *no* rights to an interest in or concerning real property, the defendants maintain that the trial court was obligated to instruct the jury about the theoretical possibility that the statute of frauds might bar the plaintiffs' claims if those claims had been formulated differently. This argument is unpersuasive. We agree with the trial court that the plaintiffs' contracts did not violate § 52-550 (a) (4) and that it was proper, therefore, to direct a verdict against the defendants on this ground.

Alternatively, the defendants argue that the trial court was obligated to instruct the jury that the agreements were unenforceable to the extent that they were agreements not to be performed within one year from the making thereof. General Statutes § 52-550 (a) (5). The defendants have not pointed to anything in the record that would support a finding that the plaintiffs' contracts required performance at an express time outside of a one year period from the making of the contracts. On the contrary, the plaintiffs testified that the contracts could have been performed at any time, if further work on the development project as originally envisaged had been abandoned and instead the property had been developed by its outright resale to a third party. In these circumstances, in light of our case law limiting the scope of § 52-550 (a) (5), the contracts did not violate that part of the statute of frauds. See *C. R.*

thereof; or (6) upon any agreement for a loan in an amount which exceeds fifty thousand dollars. . . ."

*Klewin, Inc.* v. *Flagship Properties, Inc.*, 220 Conn. 569, 579, 600 A.2d 772 (1991) (statute of frauds not violated by contracts of uncertain or indefinite duration or by contracts containing no express terms defining time for performance); *Burkle* v. *Superflow Mfg. Co.*, 137 Conn. 488, 492–93, 78 A.2d 698 (1951) (statute of frauds not violated if time for performance is indefinite, but full performance may occur within one year upon occurrence of contingency). The trial court properly directed a verdict against the defendants on this ground as well.

### III

The defendants' remaining three claims for reversal assert that the trial court abused its discretion in an evidentiary ruling, in rejecting some of the defendants' proposed interrogatories to the jury, and in denying the defendants' motion to set aside the judgment against them. Each of these claims concerns matters in which appellate courts do not engage in plenary review, but reverse only if they are persuaded that the trial court abused its discretion to the prejudice of the party appealing from the judgment.[11] We affirm each of the challenged rulings of the trial court.

### A

The defendants argue that the trial court improperly permitted Pagano to introduce into evidence certain

[11] With respect to review of evidentiary rulings, see, e.g., *Potter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, 259, 694 A.2d 1319 (1997); *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 752, 680 A.2d 301 (1996).

With respect to review of jury interrogatories, see, e.g., *Ubysz* v. *DiPietro*, 185 Conn. 47, 61–62, 440 A.2d 830 (1981); *Tomczuk* v. *Alvarez*, 184 Conn. 182, 186, 439 A.2d 935 (1981); *Falk* v. *Schuster*, 171 Conn. 5, 8–9, 368 A.2d 40 (1976); see also Practice Book (1998 Rev.) § 16-18, formerly § 312.

With respect to review of denials of motions to set aside the verdict, see, e.g., *Edwards* v. *Tardif*, 240 Conn. 610, 622, 692 A.2d 1266 (1997); *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 168, 681 A.2d 293 (1996);

documents that had been prepared by the law firm of Robinson & Cole. The documents consisted of handwritten notes, as well as a memorandum and a letter based on those notes. They contained information that was given to an attorney in the law firm by Dayton when he was consulting with the firm, on behalf of the defendants, with respect to the development of a life care center. The documents referred to Dayton's assertion that Pagano had a 20 percent interest in the proceeds of the development project. The defendants maintain that Pagano was barred from introducing the documents into evidence because their admission violated the defendants' attorney-client privilege and they constituted hearsay. We reject the first claim but find merit in the second. We conclude, nonetheless, that the admission of the documents was harmless error.

The admission of the challenged notes, memorandum and letter did not violate the defendants' attorney-client privilege. The attorney-client privilege applies to communications: (1) made by a client; (2) to his or her attorney; (3) for the purpose of obtaining legal advice; (4) with the intent that the communication be kept confidential. *Doyle* v. *Reeves*, 112 Conn. 521, 523, 152 A. 882 (1931); see also C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 12.5.1, p. 441. In this case, Cynthia Bates, an attorney formerly associated with Robinson & Cole, testified that Dayton, on behalf of Ippoliti Enterprises, had consulted Robinson & Cole about the establishment of the life care center.

"When two or more people consult an attorney together on a matter of joint interest . . . their communications [are] privileged as to the outside world, though not as to each other in a later controversy between

*Childs* v. *Bainer*, 235 Conn. 107, 113, 663 A.2d 398 (1995); *Blanchette* v. *Barrett*, 229 Conn. 256, 264, 640 A.2d 74 (1994).

themselves."[12] *State* v. *Cascone*, 195 Conn. 183, 186–87, 487 A.2d 186 (1985); see also C. Tait & J. LaPlante, supra, § 12.5.1, p. 442. Similarly, if "a client calls into [a] conference with [an] attorney one of the client's agents, and matters are discussed which bear on the agent's rights against the client," those communications would not be privileged. C. McCormick, Evidence (3d Ed. 1984), p. 219. The rationale in both instances is that the individuals involved did not intend to keep their communications secret from one another. In light of these principles, we conclude that Dayton's communications to Robinson & Cole are not covered by the defendants' attorney-client privilege.

The documents in this case are, however, inadmissible hearsay. "Hearsay is an out-of-court statement offered into evidence to establish the truth of the matters contained therein." *State* v. *Rinaldi*, 220 Conn. 345, 359, 599 A.2d 1 (1991). The plaintiffs offered these documents under the business records exception to the hearsay rule. General Statutes § 52-180[13] provides that

---

[12] We recognize that statements made by an agent on behalf of a principal to the principal's attorney may be protected by the principal's attorney-client privilege. See *Shew* v. *Freedom of Information Commission*, 245 Conn. 149, 714 A.2d 664 (1998). The factual circumstances of this case, however, present a situation in which the principal and the agent, who both shared the advice of a single law firm regarding a potential joint venture, now are engaged in a dispute regarding information that they shared with that law firm. As we discuss in text, under such circumstances, attorney-client privilege does not bar introduction of the controverted information.

[13] General Statutes § 52-180 provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such

a record of an act, transaction, occurrence or event is admissible as evidence of that act, transaction, occurrence, or event, provided that the record was made in the regular course of business. Section 52-180 (b) provides that the person making the record need not have personal knowledge of the act, transaction, occurrence, or event, although such a lack of personal knowledge may be considered in judging the weight of the evidence.

The evidence at issue constitutes double hearsay. The first level of hearsay is each writing itself. As writings, the notes, memorandum and letter meet the requirements of the business records exception. They are records of an event, made in the regular course of business, within a reasonable time period. Thus, these documents would be admissible to prove that a meeting occurred between attorneys at Robinson & Cole and Dayton.

The statements attributed to Dayton that are contained in those notes, however, present a second level of hearsay. If Dayton's statements, as recorded in Bates' notes, were submitted for the truth of the matter asserted, they would constitute hearsay despite the business records exception. These statements are not admissible as evidence of the plaintiffs' percentage interests in the life care center venture.

We conclude, nonetheless, that although the trial court improperly admitted these documents, their admission was harmless. "[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful." *Swenson* v. *Sawoska*, 215 Conn.

persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . ."

148, 153, 575 A.2d 206 (1990). The harmless error standard in a civil case is whether the improper ruling "would likely affect the result." Id.

In this case, it is not likely that the improper admission of these documents probably would have affected the jury's verdict. The controverted exhibits were: (1) Bates' handwritten notes from Dayton's meeting with Robinson & Cole attorneys regarding possible corporate structure and financing for the life care center; (2) a memorandum written by Bates to other Robinson & Cole attorneys summarizing the substance of that meeting; and (3) a cover letter written by Bates to Dayton enclosing a copy of that memorandum and organizational charts illustrating alternative corporate structures. The plaintiffs submitted these exhibits as evidence of the percentage interests held by Pagano and Dayton. Both plaintiffs, however, as well as Marcia Ippoliti, also testified at trial regarding the plaintiffs' claimed percentage interests, and they were subject to cross-examination.[14] The remaining evidence at trial, therefore, amply supported the jury's verdict. *McCahill v. Town & Country Associates, Ltd.*, 185 Conn. 37, 40–41, 440 A.2d 801 (1981). Moreover, there was nothing so inflammatory about the hearsay evidence that its admission created a risk of distorting the jury's perception of the remaining evidence. *Swenson v. Sawoska,* supra, 215 Conn. 153. Accordingly, we reject the defendants' evidentiary claims.

### B

The defendants also argue that the trial court was required to submit to the jury all of the interrogatories

[14] In his dissent, Justice McDonald argues that the admission of these documents was harmful because they were dated October, 1989, well after the controverted December, 1988, agreement allowing Pagano to cease making monthly payments and yet retain his percentage interest. Both plaintiffs and their witness Paul Carboni, however, testified at trial that Pagano retained his percentage interest after December, 1988. We are persuaded, therefore, that the plaintiffs adduced sufficient other evidence at trial to render admission of these hearsay documents harmless on this score as well.

that the defendants had proposed. In these proposed interrogatories, the jury would have been asked twenty-five questions regarding Pagano's claims and defenses, and twenty-one questions pertaining to Dayton's claims and defenses. The trial court submitted to the jury four of the interrogatories regarding the Pagano claims, and two of the interrogatories regarding the Dayton claims.

We agree with the trial court that the defendants' proposed interrogatories were not framed in such a way as to require the submission of all forty-six questions to the jury. The case would have been different if the answers sought by the defendants would have distinguished between the plaintiffs' various causes of action in such a way as to enable the defendants, in case of an adverse verdict, to avoid the implications of the general verdict rule.

"[T]he . . . general verdict rule provides that, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . The rule applies whenever a verdict for one party could reasonably be rendered on one or more distinct causes of action . . . . A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury. Alternatively, if the action is in separate counts, a party may seek separate verdicts on each of the counts." (Citations omitted; internal quotation marks omitted.) *Curry* v. *Burns*, 225 Conn. 782, 786, 626 A.2d 719 (1993). The general verdict rule does not require "interrogatories whenever there are factually distinct issues that have been litigated, even though those issues stem solely from denials of different factual allegations of the complaint." Id., 800; see *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 275–76 n.16, 698 A.2d 838 (1997); *Fabrizio* v. *Glaser*, 237 Conn. 25, 27, 675 A.2d 844 (1996).

On the present state of the record, we conclude that the trial court did not abuse its discretion in submitting to the jury only selected interrogatories to guide its deliberations. Moreover, the defendants were not prejudiced by the trial court's decision.

## C

The defendants' final claim rests on their reading of the evidentiary record on which the jury rendered its verdict in favor of the plaintiffs. From the defendants' perspective, the evidence they offered was so definitively adverse to the plaintiffs' claims that the jury acted irrationally in returning a verdict for the plaintiffs. Further, in the light of this allegedly overwhelming evidence against the plaintiffs, the defendants maintain that the trial court abused its discretion in failing to grant their motion to set aside the jury's verdict. We disagree.

As in many jury trials, the jury in this case was required to sort out, from evidence that was in considerable conflict, those facts that would form the basis for its verdict. It was for the jury to decide whether there was a binding contractual relationship between the parties. It was similarly for the jury to decide who terminated the contract, the plaintiffs or the defendants. The jury's exercise of its fact-finding function included the duty to reconcile evidentiary inconsistencies. If such inconsistencies were to be sufficient to upset jury verdicts, not many would be sustained on appeal. The trial court, having heard the testimony and observed the witnesses, was in a position far superior to ours to judge the evidentiary record as a whole. We can discern no abuse of discretion in the trial court's denial of the motion of the defendants as a whole.

The defendants' final claim is that, in rendering its verdict, the jury overlooked the fact that Michael Ippoliti, in 1985, at the beginning of the contractual relationships between the parties, was only sixteen years of

age. The trial court, however, expressly instructed the jury on the defense of infancy and on Michael Ippoliti's alleged ratification of the contracts once he had become eighteen. In accordance with these instructions, the jury reasonably could have found, as it expressly did find, that all the defendants, including Michael Ippoliti, acted jointly in furtherance of their proposed development project. It could have credited the evidence that Michael Ippoliti participated in the planning for the development of the project from 1989 to 1994, after he had reached the age of majority. Under these circumstances, the trial court did not abuse its discretion in refusing to set aside the verdict against Michael Ippoliti.

The judgment is affirmed.

In this opinion BERDON, NORCOTT and PALMER, Js., concurred.

MCDONALD, J., dissenting. The issue in this case is whether the defendants promised the plaintiff Pagano a 20 percent interest in a projected development without requiring Pagano to continue paying 20 percent of the expenses incurred by the development. I agree that the trial court improperly admitted hearsay evidence of statements made by Dayton in October, 1989, recorded by an attorney for the development project hired by the defendants while the attorney prepared the project documents. Dayton told the attorney that Pagano had at that time a 20 percent interest in the project.

The defendants claimed that Pagano was required to continue paying 20 percent of the expenses of the total cost of the project.[1] Pagano testified that he ceased payments on the note because Edgardo Ippoliti told him he could do so and still retain his 20 percent stake

---

[1] Marcia Ippoliti testified that Pagano had a 20 percent interest, and that Pagano lost his 20 percent interest when he ceased to pay his share of the expenses.

in the project. Dayton's statement to the attorney was made months after Pagano had, in December, 1988, ceased making such payments. The challenged evidence was, therefore, prejudicial to the defendants, as it concerned claims made by Pagano when the project was being formalized and well after Pagano's payments had stopped. This was a material issue in the trial as indicated by the first jury interrogatory regarding Pagano, which read: "Did the defendant, Edgardo Ippoliti, agree that Jeffrey Pagano's 20 percent interest in the development of the property would remain intact even though he stopped making his payments?" The jury answered "yes."

I cannot agree that the admission of the hearsay was harmless because Pagano and Dayton and their witness Carboni testified at the trial and were cross-examined. The very purpose of the rules of evidence is to bar unreliable evidence offered to influence the trier of fact. Although an ancient doctrine, the hearsay rule is based on the sound principle that all testimony is best considered if subject to cross-examination, our law's means to arrive at the truth. "For two centuries, common law judges and lawyers have regarded the opportunity of cross-examination as an essential safeguard of the accuracy and completeness of testimony." 1 C. McCormick, Evidence (4th Ed. 1992) § 19, p. 78. Cross-examination "is beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 J. Wigmore, Evidence (4th Ed. 1974) § 1367, p. 32. The prior, self-serving statement in the attorney's records simply could not be subject to such cross-examination.

The fact that Pagano, Dayton and Carboni testified to the same effect does not render the hearsay harmless. The issue here is not whether the evidence supports the verdict but whether in a case involving credibility of the parties, this self-serving hearsay should have been admitted to influence the jury's decision. The mere fact

that some witnesses testify to the same effect as the hearsay does not render it harmless. We would only encourage parties to bolster their case by laying a groundwork of duplicative stories. Trial by wager of law featuring compurgation by oath is no longer our way to resolve credibility. See 3 W. Blackstone, Commentaries on the Laws of England (1807) pp. 341–42.

The records were of the attorney that Edgardo Ippoliti retained to prepare the project documents. In these circumstances, the records may well have had an important, if not controlling, influence on the jury's determination of the credibility of the parties. I would conclude the ruling was not only erroneous but clearly harmful. See *Mei* v. *Alterman Transport Lines, Inc.*, 159 Conn. 307, 316–17, 268 A.2d 639 (1970).

I respectfully dissent and would remand the case for a new trial.