[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTIONS FOR SUMMARY
CT Page 3576 JUDGMENT (NOS. 125, 130. 151 AND 159)
The plaintiffs, limited partnerships, brought this action arising out of the formation of a limited partnership, claiming breach of contract, misrepresentation, breach of fiduciary duty and a violation of the Connecticut Unfair Trade Practices Act (CUTPA) against Aetna Services, Inc., and various affiliated entities (Aetna defendants) (see Figure 1, infra) and Travelers Insurance Group and its current subsidiaries (Travelers defendants). (See Figure 2, infra). The Aetna and Travelers defendants have filed motions for summary judgment in each case on the grounds that: 1) the limited partnership agreement has not been breached; 2) the misrepresentation claims are barred by the statute of frauds and the parol evidence rule; 3) the parent corporations may not be held liable for the claimed wrongful conduct of their subsidiaries; and 4) the CUTPA claims, insofar as they rely on the plaintiffs' other claims must also fail. The court consolidated the two cases for hearing and they were argued together. For the reasons that follow, the defendants' motions for summary judgment are denied.
I. FACTUAL AND PROCEDURAL HISTORY
This case arises from a complex group of relationships. First, there is a limited partnership, Pratt Street Ltd. Partnership (Pratt Street), whose limited partners are the plaintiffs Chase Pratt, LLC (Chase Pratt) and 242 Trumbull Street Limited Partnership (242 Trumbull); the general partner is A E Properties, Inc. (A E Properties). In October, 1987, when Pratt Street was formed, A E Properties was wholly owned by The Standard Fire Insurance Company (Standard Fire), which in turn was wholly owned by Aetna Services, Inc., f/k/a Aetna Life and Casualty Company (Aetna Services). The three entities (the plaintiffs and defendant A E Properties) created Pratt Street for the purpose of developing, maintaining and improving certain real estate on Trumbull Street in Hartford.
The funds for the development were loaned from Aetna Casualty and Surety Company (Aetna Casualty), wholly owned by Aetna Services, to Pratt Street. The mortgage financing was "non recourse". The primary tenants of Pratt Street's realty, leasing more than 70 percent of the available space, were Aetna Life Insurance Company (Aetna Life), wholly owned by Aetna Services. A CT Page 3577 pictorial of the web of relationships concerning Pratt Street after its formation and prior to the stock sale is shown in Figure 1.
FIGURE 1 — INTERRELATIONSHIP OF AETNA DEFENDANTS AND PLAINTIFFS PRIOR TO AETNA-TRAVELERS STOCK SALE Aetna Services, Inc.
| ______________________________|___________________________ | | | The Standard Fire Aetna Casualty and Aetna Life InsuranceInsurance Company Surety Company Company
| (mortgagee) (primary tenant) | . .A-E Properties, Inc. . . (general partner) . . |---------------- Pratt Street Ltd Partnership . . . | |Chase Pratt, LLC---------------| |----------242 Trumbull St. Ltd. (limited partner) Partnership
(limited partner)
The plaintiffs and A E Properties executed a written partnership agreement, entitled "Pratt Street Limited Partnership Limited Partnership Agreement" (the partnership agreement). Section 1.07 of the partnership agreement states that the partnership shall end after 99 years if it is not dissolved earlier by mutual consent or as provided for in Article XII of the agreement. Article XII provides for dissolution in a number of circumstances where a partner voluntarily removes itself from or is unable to continue to do business with the limited partnership. Under § 9.01, A E Properties is permitted, in its sole discretion, to transfer its interest, without the consent of the plaintiffs, only to "Aetna Life Insurance Company or any Affiliate thereof". Otherwise, the agreement requires the plaintiffs' consent for any such transfer. In Article II, the partnership agreement defines "Affiliate" as Aetna Life, the corporate parent of Aetna Life, or a subsidiary of, or corporation more than 80 percent owned by Aetna Life or Aetna Life's parent, Aetna Services.
On April 2, 1996, Aetna Services divested itself of its subsidiaries Aetna Casualty and Standard Fire by selling 100 percent of the issued and outstanding stock to Travelers CT Page 3578 Insurance Group, Inc. (Travelers). Due to this divestment, the parent corporation of A E properties, Standard Fire, and Aetna Casualty, the mortgagee, are now controlled by Travelers and not Aetna Services, and a pictorial of the current relationship is shown in Figure 2.
FIGURE 2 — INTERRELATIONSHIP AFTER AETNA-TRAVELERS STOCK SALE
Travelers Insurance Group, Inc. Aetna Services, Inc.
__________|_____________ | | | | The Standard Fire Aetna Casualty Aetna Life InsuranceInsurance Company and Surety-Company Company
| (mortgage) (primary/tenant) | . . | . .A E Properties, Inc. . . |------------------Pratt Street Ltd Partnership. . . . . . | | Chase Pratt, LLC 242 Trumbull St. Ltd Partnership
(limited partner) (limited partner)
The plaintiffs claim that this sale violated the terms of the partnership agreement, which provided that A E Properties, without the consent of the plaintiffs could only transfer its interest in Pratt Street to Aetna Life or its affiliate.
The plaintiffs have filed claims against A E Properties, Standard Fire, Aetna Life, Aetna Casualty, Aetna Services and Travelers.[1] They claim breach of contract, misrepresentation, breach of fiduciary duty and a violation of CUTPA against the Aetna defendants. They also claim that the Travelers defendants aided and abetted the Aetna defendants' breach of contract and breach of fiduciary duty, tortiously interfered with plaintiffs' contractual relations, and seek the imposition of a constructive trust regarding Travelers.
Chase Pratt further claims that any transfer of interest in Pratt Street or the related mortgage should be set aside.
The Travelers defendants and the Aetna defendants have each moved for summary judgment against the plaintiffs as to substantially all of the claims, on essentially the same bases in each case. The Aetna defendants claim that there is no genuine issue of material fact and they are entitled to judgment as a CT Page 3579 matter of law because: 1) the partnership agreement was not breached; 2) the statute of frauds and parol evidence rule prevent introduction of any evidence of the agreement not included in the written partnership agreement, leases or loan agreements; and 3) the corporate shield cannot be pierced.
The Travelers defendants claim that there are no genuine issues of material fact and they are entitled to summary judgment as a matter of law because: 1) the plaintiffs cannot prove the breach of any fiduciary duty resulting from the stock purchase; 2) Aetna Casualty and Surety Company, as a sister corporation to the Standard Fire Insurance Company has no partnership relationship to or management or control over the general partner A E properties, Inc., and therefore never owed a fiduciary duty to the plaintiffs; 3) the mere fact that the Standard Fire Insurance Company is the parent corporation of A E Properties, Inc., is not sufficient to create a fiduciary duty; 4) the Travelers Insurance Group, Inc., could not have aided and abetted a breach of fiduciary duty because there was no breach; 5) any claims based on oral or written agreements not included in the partnership and loan agreements or leases cannot be supported because of operation of the statute of frauds and the parol evidence rule; 6) the stock purchase did not violate the partnership agreement; 7) no constructive trust should be imposed absent a violation of the partnership agreement; and 8) so far as the underlying claims fail, the CUTPA claim should fail as well. These arguments boil down to the claims of the Aetna defendants that the partnership agreement was not breached, the statute of frauds and the parole evidence rule do not permit claims based on representations not included in the written contracts and the corporate veil should not be pierced.
II. STANDARD FOR SUMMARY JUDGMENT
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Department of Social Servicesv. Saunders, 247 Conn. 686, 696, ___ A.2d ___ (1999); see also Practice Book § 17-49. Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way."Miller v. United Technologies Corp. , 233 Conn. 732, 751-52,660 A.2d 810 (1995). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to CT Page 3580 the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material fact which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted, internal quotation marks omitted.) Hertz Corp. v. Federal Ins. Co., 245 Conn. 374,381, 713 A.2d 820 (1998).
III. DISCUSSION A.
1. STATUTE OF FRAUDS
In opposition to the motions for summary judgment, the plaintiffs claim that at the time Pratt Street was formed, employees of Aetna Services and its subsidiaries (the Aetna) represented that the Aetna would remain committed to Pratt Street as a general partner, lender and major tenant. The plaintiffs contend that they would not have entered into the limited partnership without this commitment from the Aetna.
The defendants assert that any affirmations of commitment to the limited partnership made by the Aetna to the plaintiffs are governed by Connecticut's statute of frauds; General Statutes § 52-550. In particular, the defendants rely on General Statutes §§ 52-550 (a)(4) through (6), which require "any agreement for the sale of any real property or any interest in or concerning real property; . . . any agreement that is not to be performed within one year from the making thereof; or . . . any agreement for a loan in an amount which exceeds fifty thousand dollars" to be in writing and signed by the party to be charged.
The statute of frauds applies to contracts not performable within one year. Under the partnership agreement, the term of the partnership is 99 years. Due to the fact that the partnership could have been dissolved within one year of the making of the contract, the statute of frauds is inapplicable. See C.R. Klewinv. Flagship Properties, Inc., 220 Conn. 569, 577-79, 600 A.2d 772
(1991). For the court to apply the statute of frauds to a particular contract, the defendants must be able to point to something "in the record that would support a finding that the plaintiffs' contracts required performance at an express time CT Page 3581 outside of a one year period from the making of the contract."Pagano v. Ippoliti, 245 Conn. 640, 647, 716 A.2d 848 (1998). "[O]ur most apposite precedent comports with the majority view that a contract of indefinite duration is not subject to the `one year' provision of the statute of frauds." Finley v. Aetna Life Casualty Co., 202 Conn. 190, 197, 520 A.2d 208 (1987).
Although the partnership agreement does state a 99 year term, the agreement was not one that "required performance at an express time outside of a one year period from the making of the contract." Pagano v. Ippoliti, supra, 245 Conn. 647. Section 1.07 of the agreement, which contains the 99 year term, provides "that the partnership may be dissolved earlier by mutual consent of the Partners or pursuant to Article XII." The terms of the agreement did not require that any dissolution must take place more than one year from the creation of the agreement. See C.R. Klewin,Inc. v. Flagship Properties, Inc., supra, 220 Conn. 583 (holding that "an oral contract that does not say, in express terms, that performance is to have a specific duration beyond one year is, as a matter of law, the functional equivalent of a contract of indefinite duration for the purposes of the statute of frauds" and "is outside the proscriptive force of the statute"). The agreement could have been dissolved by mutual consent or by operation of any of the events listed in Article XII that trigger dissolution at any time. I conclude that the alleged commitments made by the Aetna to the plaintiffs when entering the limited partnership are, therefore, not barred by the statute of frauds.
The defendants contend that the alleged promise by the Aetna to remain a primary tenant runs afoul of the statute of frauds in that no such terms were included in the actual leases. Likewise, the defendants contend that any financial commitments not included in the written loan contracts are barred by the statute. The defendants attribute claims to the plaintiffs that have not been made. Their complaints focus on a breach of the partnership agreement. There is no claim that any lease or contract for a loan were created orally. Therefore, the statute of frauds is inapplicable to the facts of this case. Accordingly, the motions for summary judgment on the basis of the Statute of Frauds cannot be granted.
2. PAROL EVIDENCE
The defendants further contend that the parol evidence rule precludes the claims of the plaintiffs that the Aetna breached CT Page 3582 any commitments to them and Pratt Street not expressly stated in the partnership agreement, leases or financing agreements. "Although the parol evidence rule `prohibits the introduction of evidence that varies or contradicts an exclusive written agreement'; Ruscito v. F-Dyne Electronics Co., 177 Conn. 149, 160,411 A.2d 1371 (1979); that rule `does not bar the use of extrinsic evidence to aid in the interpretation of contractual language.' Heyman Associates No. 1 v. Insurance Co. ofPennsylvania, 231 Conn. 756, 781 n. 22, 653 A.2d 122 (1995). . . ." (Citation omitted.) Hare v. McClellan, 234 Conn. 581, 596-97,662 A.2d 1242 (1995). "The parol evidence rule does not of itself . . . forbid the presentation of `parol evidence,' that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only theuse of such evidence to vary or contradict the terms of such a
contract. Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. [S]uch evidence may still be relevant `(1) to explain an ambiguity appearing in the instrument; [or] (2) to prove a collateral oral agreement which does not vary the terms of a writing. . . .'" (Emphasis in original.) TIE Communications,Inc. v. Kopp, 218 Conn. 281, 288-89, 589 A.2d 329 (1991), quotingJay Realty, Inc. v. Ahearn Development Corp. , 189 Conn. 52,55-56, 453 A.2d 771 (1983). "The operative question becomes whether parol evidence is offered to contradict the writing or to aid in its interpretation." Shawmut Bank Connecticut, N.A. v.Connecticut Limousine Service, Inc., 40 Conn. App. 268, 275,670 A.2d 880, cert. denied, 236 Conn. 915, 673 A.2d 1143 (1996).
The plaintiffs claim that the statements made by various high-level employees of the Aetna, affirming the Aetna's commitments to downtown Hartford and to Pratt Street as a general partner, tenant and lender, explain the meaning of the terms of the partnership agreement and do not contradict them. Specifically, the plaintiffs contend that the evidence concerning the representations made at the time of and the circumstances surrounding the formation of the limited partnership explain the meaning of section 9.01 of the partnership agreement regarding the sale, assignment or other transfer of A E Properties' partnership interest. As I determine that the contract is ambiguous as to whether the sale of the stock of the parent corporation of A E properties constitutes a violation of the partnership agreement under the surrounding circumstances, I consider the statements made at the time of the formation of Pratt Street "to aid in the interpretation of the contract and to CT Page 3583 determine the intent of the parties." Foley v. Huntington Co.,42 Conn. App. 712, 734, 682 A.2d 1026, cert. denied, 239 Conn. 931,693 A.2d 397 (1996). Therefore, the claimed statements made by the parties involved in the partnership agreement may be properly considered to aid in determining the intent of the parties and interpreting the provisions of the contract allegedly breached by the defendants. Thus, it is not necessary to consider whether the claimed oral commitments made by Aetna officers are admissible under the `collateral oral agreement' prong of the parol evidence rule. See Jay Realty, Inc. v. Ahearn Development Corp. , supra,189 Conn. 56.
I conclude that neither the statute of frauds nor the parol evidence rule operate to preclude the evidence relied upon by the plaintiffs in opposing the defendant's motions for summary judgment. The issue becomes therefore whether the defendants are entitled to summary judgment on the remaining grounds in light of the affidavits and deposition testimony provided by the plaintiffs in opposition to the motions. See Practice Book §17-45; Oberdick v. Allendale Mutual Ins. Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 283004 (August 25, 1993, Celotto, J.); Sparco v. Rob's Auto Service,Inc., Superior Court, judicial district of Middlesex, Docket No. 62578 (April 22, 1993, Spallone, J.); Holland v. Krawski,25 Conn. Sup. 406, 407, 206 A.2d 648 (1964).
 B.
I. BREACH OF CONTRACT
The plaintiffs allege that the Aetna defendants breached the partnership agreement based in large part on the evidence discussed in Part A., supra. The defendants assert that the breach of contract claim is unsupportable under the terms of the contract, and accordingly they are entitled to judgment as a matter of law. The partnership agreement is silent as to the event that actually occurred in this case. Moreover, neither the parent or `grandparent' Aetna corporations were signatories to the partnership agreement. Therefore, for the court to determine whether the sale of the stock of Standard Fire and Aetna Casualty to Travelers violated the partnership agreement, the court would have to interpret the provisions governing the transfer of A E Properties' interest in Pratt Street.
"A contract must be construed to effectuate the intent of the CT Page 3584 parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) Southeastern Connecticut RegionalResources Recovery Authority v. Department of Public UtilityControl, 244 Conn. 280, 291, 709 A.2d 549 (1998). Generally, questions involving the intent of the parties are not appropriate for summary judgment. See Saurez v. Dickmont Plastics Corp. ,229 Conn. 99, 111, 639 A.2d 507 (1994); Union Trust Co. v. Jackson,42 Conn. App. 413, 419, 679 A.2d 413 (1996); Reynolds v. ChryslerFirst Commercial Corp. , 40 Conn. App. 725, 731, 673 A.2d 573, cert. denied, 237 Conn. 913, 675 A.2d 885 (1996). "[E]ven with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." WadiaEnterprises, Inc. v. Hirschfield, 224 Conn. 240, 250,618 A.2d 506 (1992). The plaintiffs have submitted specific deposition testimony and affidavits that call into question the meaning of § 9.01 of the contract, which deals with A E Properties' right to transfer its interest in the limited partnership. The plaintiffs contend that this evidence also shows that the Aetna committed to remain affiliated with the limited partnership and claim that that commitment is reflected by § 9.01 of the partnership agreement. It is apparent that the plaintiffs have provided a factual predicate for finding that a genuine issue of material fact exists as to whether the partnership agreement was breached.
2. BREACH OF FIDUCIARY DUTY
The plaintiffs have claimed a breach of fiduciary duty based in part on the same alleged in support of the breach of contract claims as well as the alleged mismanagement of the limited partnership. The defendants assert that the stock transfer did not breach a fiduciary duty, nor did it violate the partnership agreement and that none of the parent or sister corporations of A E Properties owed a fiduciary duty to the plaintiffs.
"In general, partners act as trustees toward each other and toward the partnership. Moreover, the general partner of a limited partnership has the fiduciary duty `of rendering true accounts and full information about anything which affects the partnership. ' Williams v. Bartlett, 189 Conn. 471, 482 n. 8,457 A.2d 290 (1983)." (Internal quotation marks omitted.) KonoverDevelopment Corp. v. Zeller, 228 Conn. 206, 218-19, 635 A.2d 798
CT Page 3585 (1994). Our Supreme Court has stated: "[the fiduciary] must act honestly, and with the finest and undivided loyalty to the trust, not merely with that standard of honor required of men dealing at arm's length and the workaday world, but with a punctilio of honor the most sensitive." (Internal quotation marks omitted). Id., 220. The duties of a fiduciary apply to partners who self-deal. Murphy v. Wakelee, 247 Conn. 396, 404, ___ A.2d ___ (1998). "[I]n determining whether the general partner has dealt fairly with the limited partner, the fact finder should take into account all of the circumstances surrounding their business relationship. " Konover Development Corp. v. Zeller, supra,226 Conn. 226.
It is evident that genuine issues of material fact prevent resolution of this issue by summary judgment. Aetna Services and Aetna Life, together with Standard Fire and Aetna Casualty move for summary judgment as to the breach of fiduciary duty based primarily on the claim that they owed no duty to the limited partnership. If the corporate veil may be pierced; see, infra, Part III.C.; the plaintiffs have shown that these defendants may be liable for a breach of fiduciary duty by A E Properties. There exist questions of fact as to the extent of the Aetna's commitments to the limited partnership as well. See KonoverDevelopment Corp. v. Zeller, supra, 226 Conn. 226. Travelers and its current subsidiaries rely on the claim that the transfer of the stock of Standard Fire breached no duty. I disagree, and conclude that there exist genuine issues of fact as. to whether the transfer did breach duties, both contractual, as discussed above, and fiduciary. For example, the plaintiffs have provided deposition testimony from an A E Properties executive, David Brooker, that calculations of cash available were not made and cash was not distributed at certain times. In light of the fact-sensitive nature of fiduciary duties as described in KonoverDevelopment Corp. v. Zeller, supra, 228 Conn. 226, the defendants have not met their burden of demonstrating the nonexistence of a genuine issue of fact, and their motions on the ground that no fiduciary duties existed must fail.
 C.
Due to their corporate status, Aetna Life, Aetna Casualty, Standard Fire, and Aetna Services argue that they are entitled to summary judgment because they cannot be held liable for the actions of A E Properties. The plaintiffs respond that, based on the depositions of the employees of the Aetna who were involved CT Page 3586 in the formation of the limited partnership, there is a genuine issue of material fact as to whether the doctrine of piercing the corporate veil should be used to find those corporations liable.
"The concept of piercing the corporate veil is equitable in nature." Angelo Tomasso, Inc. v. Armor Construction and Paving,Inc., 187 Conn. 544, 555, 447 A.2d 406 (1982). "Under Connecticut law, the corporate veil may be pierced under either the `instrumentality' or `identity' rules." United ElectricalContractors, Inc. v. Progress Builders, Inc., 26 Conn. App. 749,755, 603 A.2d 1190 (1992). Absent express agency, the plaintiff must prove three elements under the instrumentality rule: "(1) [c]ontrol, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of the plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or loss complained of." Zaist v. Olson, 154 Conn. 563,575, 227 A.2d 552 (1967). "The identity rule, on the other hand, has been expressed as follows: `If plaintiff can show that there was such a unity of interest and ownership that the independence of the corporation had in effect ceased or had never begun, an adherence to that fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.'" Saphir v.Neudstat, 177 Conn. 191, 210, 413 A.2d 843 (1979), quoting Zaistv. Olson, supra, 154 Conn. 576. "The issue of whether the corporate veil is pierced presents a question of fact." AngeloTomasso, Inc. v. Armor Construction and Paving, Inc., supra,187 Conn. 561.
It is apparent that the plaintiffs have produced evidence that raises a genuine issue of material fact as to whether this case presents a situation where the corporate veil should be pierced. The plaintiffs point to deposition testimony of employees of A E Properties that shows that they may have been paid by other Aetna corporations. The depositions also show that formalities to distinguish the particular corporation such employees were acting for, or on behalf, may not have been CT Page 3587 followed. The deposition testimony of the vice-president of Aetna who negotiated the limited partnership deal, William Russell, reveals that A E Properties may have had very limited assets. SeeSFA Folio Collections, Inc. v. Bannon, 217 Conn. 220, 233,585 A.2d 666 (1991) (indicating that although parent corporations and their subsidiaries are generally considered separate even when parent owns all of stock and has same directors and officers, corporate veil may be pierced "where the corporate assets have been intermingled, where the formalities of separate corporate procedure have been ignored, or where the corporation is inadequately financed"). The plaintiffs have provided deposition testimony that A E Propertie's employees were actually all employees of the Aetna. The deposition testimony of Russell raises substantial questions about the extent of the Aetnas control over and identity with A E Properties. See UnitedElectrical Contractors, Inc. v. Progress Builders, Inc., supra,26 Conn. App. 756 ("A key factor in determining whether the corporate shield should be disregarded is the degree of control or influence exercised over the corporation. . . ."). Due to the presence of genuine issues of fact, summary judgment in favor of the sister and parent corporations of A E Properties on this ground must be denied.
 D.
The plaintiffs have alleged that the Aetna misrepresented certain facts to induce them into entering into and making contributions to the limited partnership. Although they did move for summary judgment on this cause of action, the defendants did not directly address this issue in their memoranda of law.
Therefore, I need not address this issue as it was not argued in the briefs. See Leydon v. Geenwich, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 143373 (July 8, 1998, Karazin, J.). The court may proceed however, without addressing inadequately briefed arguments. See RR Poll Home,Inc. v. Planning Zoning Commission, Superior Court, judicial district of Danbury, Docket No. 316501 (December 5, 1995,Riefberg, J.). I will therefore consider this issue in the interests of judicial economy, as it was raised in argument.
"The elements of fraudulent misrepresentation are as follows: (1) a false representation must be made as to a statement of fact; (2) the statement was untrue and known by the defendant to be untrue; (3) the statement was made to induce the plaintiff to CT Page 3588 act; and (4) the plaintiff acted on the representation to [its] detriment." (Internal quotation marks omitted.) WellingtonSystems, Inc. v. Redding Group, Inc., 49 Conn. App. 152, 164-65,714 A.2d 21 (1998); see also Citino v. Redevelopment Agency,51 Conn. App. 262, 275, ___ A.2d ___ (1998). "Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues of fact." (Internal quotation marks omitted.) Maturo v.Gerard, 196 Conn. 584, 587, 44 A.2d 1199 (1985).
"[T]he moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact. . . ." Haesche v. Kissner, 229 Conn. 213, 217,640 A.2d 89 (1994). The record reveals that the defendants have not met their burden of showing the absence of genuine issues of material fact. The same evidence of the Aetna's alleged representations of a long term commitment to the limited partnership that the defendant's claim is inadmissable parol evidence would be admissible to support a misrepresentation claim. The plaintiff's correctly assert that parol evidence is admissible to prove misrepresentation. See Yeong Gil Kim v. Magnotta,49 Conn. App. 203, 214-15, 714 A.2d 38 (1998). Because the defendants have failed to sufficiently demonstrate the absence of genuine issues of material fact, the defendants' motions for summary judgment as to the misrepresentation claims fail and must be denied.
 E.
The Travelers defendants moved for summary judgment as to the CUTPA claims based only on the assertion that the underlying claims fail, and therefore, the CUTPA claims should fail as well. As discussed above, there exist genuine issues of material fact with regard to the underlying claims, and therefore the motions for summary judgment as to the CUTPA claims also fail and must be denied.
IV. CONCLUSION
For the reasons set forth, the defendants are not entitled to judgment as a matter of law, and their motions for summary judgment are denied in each case.
Samuel H. Teller, J.